414 F.2d 153
 Fed. Sec. L. Rep. P 92,440
Bernard A. CHAPMAN, Anna Chapman, Joseph C. Kalman, Thomas
L. Lowery, Jr., Dale H. Burgess, Leonard G.
Burgess, Johanna Adamson, and Ralph
Isbrandt, Plaintiffs-Appellees,
v.
James B. DUNN, Receiver for Ohio East Producers, Defendant-Appellant.
 No. 18825.
 United States Court of Appeals Sixth Circuit.
 July 9, 1969.
 
 William E. Speer, Detroit, Mich., for appellant.
 C. Richard Abbott, Detroit, Mich., for appellees; Robert L. Heritier, John R. Nicholson, Detroit, Mich., on brief.
 Philip A. Loomis, Jr., Gen. Counsel, Walter P. North, Associate Gen. Counsel, Jacob H. Stillman, Asst. Gen. Counsel, David J. Hensler, Atty., S.E.C., Washington, D.C., on brief as amicus curiae for Securities and Exchange Commission.
 Before WEICK, Chief Judge, PHILLIPS, Circuit Judge, and McALLISTER, Senior Circuit Judge.
 PHILLIPS, Circuit Judge.
 
 
 1
 This is an action under the Securities and Exchange Act of 1933 for the rescission of sales of unregistered securities. Plaintiffs-appellees (the investors) sued the issuer to recover the consideration paid for fractional undivided interests in oil and gas leases.
 
 
 2
 On cross-motions for summary judgment District Judge Fred W. Kaess concluded that there was no dispute as to any material fact and granted summary judgment in favor of the investors in the amount of $175,278.73, plus interest. The issuer appeals. We affirm.
 
 
 3
 The Securities and Exchange Commission (SEC) was granted leave to file a brief amicus curiae in this Court.
 
 
 4
 This action was filed under 12(1) of the Act, 15 U.S.C. 77l(1)[1] on the theory that the sale of these securities was in violation of 5 of the Act, 15 U.S.C. 77e, in that no registration statement was filed with the SEC. The issuer contends that the sale of the securities was exempt from the requirement of filing.
 
 
 5
 The issuer was a resident of Michigan. All the land covered by the oil and gas leases which are the subject of this litigation is located in Ohio. The issuer maintained an office and staff in Michigan for the management of his oil and gas business. Sales were made to at least 78 investors, including plaintiffs-appellees. The District Court found that all except two of the investors were residents of Michigan. On this appeal the issuer contends that at the time the securities were sold he believed that all the investors were Michigan residents.
 
 
 6
 The investors paid the issuer a specific amount for each fractional interest they purchased. No registration statement of any kind was filed with SEC nor was any type of registration statement or prospectus delivered or offered to the investors. The United States mail was used to issue and deliver the securities.
 
 I.
 
 7
 The first question to be determined is whether, as contended by the issuer, these transactions are excluded under 3(a)(11) of the Act, 15 U.S.C. 77c(a)(11) which exempts:
 
 
 8
 'Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.'
 
 
 9
 The District Judge held that the exception is not applicable under the facts of this case because:
 
 
 10
 (1) The issuer was not 'doing business' in Michigan within the meaning of the statutory exemption, since the financial venture involved leases of oil and gas properties located in Ohio.
 
 
 11
 (2) At least two purchasers resided outside the State of Michigan. The securities therefore were not sold to 'persons resident within a single State.'
 
 
 12
 For the purposes of this opinion we pretermit decision of the question of whether all the sales were made to 'persons resident within a single State' and proceed to determine whether the issuer was 'doing business' in Michigan within the meaning of the above-quoted exemption.
 
 
 13
 The statute does not contain a definition of the term 'doing business.' Section 3(a)(11) originated as a part of 5 of the 1933 Act, which was introduced as H.R. 5480. The Report of the House Committee on Interstate and Foreign Commerce contains this comment:
 
 
 14
 'SECTION 5. PROHIBITIONS RELATING TO INTERSTATE OR FOREIGN COMMERCE AND THE MAILS
 
 
 15
 'Subject to the exemptions allowed by sections 3 and 4, it is made unlawful for any person to make use of the mails or any means or instruments of interstate or foreign commerce (a) before the effective date of registration, or while the registration is suspended, to sell any security or to carry or cause to be carried any security for the purpose of sale or delivery after sale, and (b) after the effective date of registration to transmit any prospectus relating to the sale of any such security that does not meet the requirements set in section 10, or to carry or cause to be carried any such security for the purpose of sale or delivery after sale, unless accompanied or preceded by a prospectus meeting such requirements.
 
 
 16
 'The provisions of this section as to the use of the mails, however, do not apply to the sale of a security where the issue of which it is a part is sold only to persons resident within a single State, where the issuer is a resident and doing business within such State.' H.R.Rep. No. 85, 73d Cong., 1st Sess. 14 (1933).
 
 
 17
 The report of the Committee of Conference made minor changes in the phraseology of the 1933 bill and the following was enacted as a part of 5 of the original Act:
 
 
 18
 '(c) The provisions of this section relating to the use of the mails shall not apply to the sale of any security where the issue of which it is a part is sold only to persons resident within a single State or Territory, where the issuer of such securities is a person resident and doing business within, or, if a corporation, incorporated by and doing business within such State or Territory.' H.R.Rep.No.152, 73d Cong., 1st Sess. 5 (1933).
 
 
 19
 The Securities Exchange Act of June 6, 1934, c. 404, 202, 48 Stat. 906, amended the 1933 statute by transferring from 5 to 3(a)(11), under the heading 'Exempted Securities,' the language relating to intrastate transactions, as follows:
 
 
 20
 '(11) Any security which is a part of an issue sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.'
 
 
 21
 The Committee of Conference explained the purpose of this amendment as follows:
 
 
 22
 'The new section 3(a)(11) incorporates the existing section 5(c) of the act and further makes clear that the exemption is not limited to the use of the mails, if sales in the course of the distribution of the issue are limited to residents within a single State or Territory.' H.R.Rep.No.1838, 73d Cong., 2d Sess. 40 (1934).
 
 
 23
 The purposes of the 1934 amendments were explained in some detail on the floor of the House June 1, 1934, by Representative Sam Rayburn. The only reference to the intrastate amendment was made in response to an inquiry by Representative Dirksen, as follows:
 
 
 24
 'Mr. DIRKSEN: Mr. Speaker, will the gentleman yield for a question?
 
 
 25
 'Mr. RAYBURN: I yield.
 
 
 26
 'Mr. DIRKSEN: The gentleman will remember that in the discussion when the bill was under consideration in the House I voiced some apprehension about the small corporate entities whose securities were unregistered, that they might be placed under undue restrictions with respect to the over-the-counter markets. I understand the bill has been amended and an exception has been made in their favor.
 
 
 27
 'Mr. RAYBURN: An exception is made in unregistered securities of companies predominantly intrastate in character.' 78 Cong.Rec. 10269 (1934).
 
 
 28
 In construing the private offering exemption clause in the Act, the Supreme Court said in SEC v. Ralston Purina Co., 346 U.S. 119, 124, 73 S.Ct. 981, 984, 97 L.Ed. 1494:
 
 
 29
 'The design of the statute is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions. The natural way to interpret the private offering exemption is in light of the overall statutory purpose.'
 
 
 30
 Applying this rule, we interpret the intrastate exemption in the light of the overall statutory purpose.
 
 
 31
 The caption to the 1933 Act contained the following language:
 
 
 32
 'To provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes.' 48 Stat. 74 (1933).
 
 
 33
 In his message to Congress, dated March 29, 1933, recommending enactment of this legislation, President Franklin D. Roosevelt said:
 
 
 34
 'There is, however, an obligation upon us to insist that every issue of new securities to be sold in interstate commerce shall be accompanied by full publicity and information, and that no essentially important element attending the issue shall be concealed from the buying public.
 
 
 35
 'This proposal adds to the ancient rule of caveat emptor, the further doctrine 'let the seller also beware.' It puts the burden of telling the whole truth on the seller. It should give impetus to honest dealing in securities and thereby bring back public confidence.' H.R.Rep.No.85, 73d Cong., 1st Sess. 2 (1933).
 
 
 36
 In the light of this legislative history, we address ourselves to the issue of whether sales of securities by a Michigan resident to other Michigan residents is exempt from the filing of a registration statement under 3(a)(11) of the Act when all the income producing property to which the securities apply is located outside the State of Michigan. We answer the question in the negative.
 
 
 37
 When Congress enacted this legislation the country was in the middle of a great economic crisis. Prior to this time the sale of securities across the nation had been subject to considerable abuse by dishonest or zealous sellers and promoters. Supervision of these securities had been left to the individual States. Experience had demonstrated that State legislation was not effective to control this situation. Millions of dollars invested by the public had been lost on worthless securities.
 
 
 38
 'The exemptions do not include the securities of public utilities and others more or less supervised by the respective State blue sky commissions, where the securities are advertised and sold across State lines. The reason for this is that some State commissions are very strict in their scrutiny and supervision, while others are not. There is no uniformity of laws controlling the State commissions, and State commissions have been, and will continue to be, practically ineffective where securities are issued and sold across State lines, to which the jurisdiction of a State does not extend. State laws have failed to meet the present situation in the sale of utility and other securities in interstate commerce, with resultant loss to our people of billions of dollars.' S.Rep.No.47, 73d Cong., 1st Sess. 4 (1933).
 
 
 39
 The legislative history demonstrates to our satisfaction that Congress passed this Act in an attempt to regulate uniformly the interstate sale of securities and that this legislation was aimed at insuring the public a fair and full disclosure with respect to all securities which were sold in interstate commerce.
 
 
 40
 The proponents of the Act made it clear that it was not designed to apply to those securities which were being supervised effectively by State regulation. S.Rep.No.47, 73d Cong., 1st Sess. 4 (1933) and H.R.Rep.No.85, 73d Cong., 1st Sess. 5 (1933). Section 3(a)(11) was designed to exempt these State regulated securities from the application of the Act.
 
 
 41
 This section has three basic conditions which must be met before the exemption is available:
 
 
 42
 (1) The entire issue must be offered and sold only to residents of one State.
 
 
 43
 (2) The issuer must be a resident of that same State.
 
 
 44
 (3) The issuer must be doing business within the same State.
 
 
 45
 Assuming arguendo that the first two conditions were satisfied in the present case, we hold that the issuer has not met the third condition and therefore has failed to bring himself within the exemption.
 
 
 46
 The issuer operated and staffed an office in Michigan from which he offered and sold these securities. While this can be viewed as 'doing business' in Michigan for some purposes, such as State taxation and judicial process, we conclude that it is not 'doing business' within the meaning contemplated by Congress in 3(a)(11) of the Act. We are convinced that Congress meant the 'doing business' requirement of 3(a)(11) to be something substantially more than has been held sufficient to subject one to service of process in civil suits. See McCauley, Intrastate Securities Transactions Under the Federal Securities Act, 107 U.Pa.L.Rev. 937, 950 (1959).
 
 
 47
 The only reported case in point cited in the briefs or which our independent research has disclosed is S.E.C. v. Truckee Showboat, Inc., 157 F.Supp. 824 (S.D.Calif., C.D.). Truckee was a California corporation which offered to sell California residents shares of its stock. The proceeds from the sales of the stock were to be used to acquire, renovate, and operate a hotel in Nevada. Truckee did not file a registration statement, relying instead on the intrastate exemption of 3(a)(11). After making a finding of fact that the proceeds of the stock sales were to be used on Nevada property, the District Court concluded that the exemption of 3(a)(11) was not available to Truckee.
 
 
 48
 In the present case all the oil and gas leases involved were located in Ohio. Substantial correspondence through the mails took place with regard to these securities. There can be no doubt that this was an interstate transaction of securities involving interstate commerce within the meaning of the Act.[2]
 
 
 49
 This case presents a good illustration of the type of security transactions to which the Act was intended to apply due to the difficulty of supervision through State regulation. Even assuming that most of the books and records of the issuer were available to the Michigan Securities Commission for inspection, the income producing operations are located beyond the reach of the Michigan Commission's jurisdiction. Effective regulation of the offering might well have required inspection of the oil and gas wells located in Ohio, the questioning of persons engaged in drilling operations in Ohio and familiarity with the geology of Ohio. Presumably there is co-operation among the offices of the various States regulating securities, but the procedure can be time consuming and costly. Sometimes it would be impossible for one State authority to conduct an adequate investigation and to secure a full disclosure of the affairs of a company whose income producing operations are in another State.
 
 
 50
 Michigan has enacted the Uniform Securities Act. Under 408 of that Act, 14 Mich.Stat.Ann. 19.776(408), C.L.Mich.1948, 451.808 (P.A.1964, No. 265), the administrator of the State Securities Commission can issue cease and desist orders, injunctions and even appoint a receiver to manage the assets of a company that violates the provisions of the State statute. The difficulty involved in enforcing this provision in regard to assets located in another State is obvious. Judicial proceedings in other States would have to be undertaken. By the time all this had taken place, the assets of the issuer could be exhausted and the investment could become worthless. This is a situation in which there is a practical need for the application of federal regulation as contemplated by the 1933 Act.
 
 
 51
 The SEC has ruled that the intrastate exemption is unavailable when an offering is made in one State of interests in income producing operations located in another State. In Securities Act Release No. 4434 (1961), the Commission stated:
 
 
 52
 'The legislative history of the Securities Act clearly shows that this exemption was designed to apply only to local financing that may practicably be consummated in its entirety within the state or territory in which the issuer is both incorporated and doing business. 'In view of the local character of the section 3(a)(11) exemption, the requirement that the issuer be doing business in the state can only be satisfied by the performance of substantial operational activities in the state of incorporation. The doing business requirement is not met by functions in the particular state such as bookkeeping, stock record and similar activities or by offering securities in the state. Thus, the exemption would be unavailable to an offering by a company made in the state of its incorporation of undivided fractional oil and gas interests located in other states even though the company conducted other business in the state of its incorporation. While the person creating the fractional interests is technically the 'issuer' as defined in section 2(4) of the Act, the purchaser of such security obtains no interest in the issuer's separate business within the state.'
 
 
 53
 Other writers in the field have placed the same construction upon the exemption. See McCauley, Intrastate Securities under the Federal Securities Act, 107 U.Pa.L.Rev. 937; Loss, Securities Regulation, Vol. 1, p. 601.
 
 
 54
 It is settled case law that the one claiming exemption from the registration provisions of the Act must carry the burden of proving its availability. S.E.C. v. Ralston Purina Co., supra, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494; Strahan v. Pedroni, 387 F.2d 730 (5th Cir.); United States v. Custer Channel Wing Corp., 376 F.2d 675 (4th Cir.), cert. denied,389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119. It is also settled that these exemption provisions are to be construed strictly. Strahan v. Pedroni,supra; United States v. Custer Channel Wing Corp., supra; and Capital Funds, Inc. v. S.E.C., 348 F.2d 582 (8th Cir.).
 
 
 55
 We therefore conclude that, in order to qualify for the exemption of 3(a)(11), the issuer must offer and sell his securities only to persons resident within a single State and the issuer must be a resident of that same State. In addition to this, the issuer must conduct a predominant amount of his business within this same State. This business which the issuer must conduct within the same State refers to the income producing operations of the business in which the issuer is selling the securities, which in this case was oil and gas development operations located solely in Ohio, and not in Michigan where the issuer maintained his residence.
 
 II.
 
 56
 The issuer further claims that the sales involved a non-public offering and were not required to be registered by virtue of 4 of the Act, 15 U.S.C. 77d(2).
 
 
 57
 District Judge Kaess dealt convincingly with this contention as follows:
 
 
 58
 'In determining whether an offering is public or non-public, a number of factors are taken into consideration, namely:
 
 
 59
 (a) The number of officers and their relationship to each other and to the issuer;
 
 
 60
 (b) The number of units offered;
 
 
 61
 (c) The size of the offering;
 
 
 62
 (d) And the manner of the offering.
 
 
 63
 The answers to interrogatories by defendant Ben Gittleman, as well as the affidavits filed, indicate the following: 1. That the defendant sold oil and gas securities to at least 78 individuals and firms. 2. The defendant resides in Alma, Michigan, and no sales of securities were made in that area. 3. The defendant knew only six such persons either socially or through business. 4. The plaintiffs collectively invested in securities involving 44 gas and oil leases. 5. In some leases, as many as 24 interests were sold by defendant to separate investors. 6. The 8 plaintiffs invested over $175,000 in defendants' securities and the entire offering approached One Million Dollars. 7. Affidavits indicate that the sales were accomplished through agents and salesmen. 8. Some purchasers had never invested in oil and gas securities prior to this purchase. 9. The record indicates that the securities were sold to anyone who had money to purchase them-- housewives, physicians and businessmen.'
 
 
 64
 We agree with the District Court that the sales in question are not exempt as a private offering. S.E.C. v. Ralston Purina Co., supra, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494.
 
 III.
 
 65
 Section 12(1) of the Act, 15 U.S.C. 77l provides that the investors may sue the issuer to recover the consideration paid '* * * upon the tender of such security * * *.' The investors tendered these securities to the issuer in their complaint. The issuer contends that this was an insufficient tender. We find no merit in this argument.
 
 
 66
 'The purpose of a tender is to put the parties in status quo. The plaintiffs who have already paid for the stock do not have to give up the stock before they sue for the return of the purchase money. Defendants have not indicated any prejudice to them by the form of the tenders.' Stadia Oil & Uranium Co. v. Wheelis, 251 F.2d 269, 274 (10th Cir.).
 
 
 67
 In the Stadia case the tenders were made with motions to file amended complaints. In Moses v. Michael, 292 F.2d 614 (5th Cir.) the tender was made in the complaint. In both cases, the Courts held the tenders were sufficient. We hold that the tenders in the present case were sufficient to comply with 12(1) of the Act.
 
 
 68
 Affirmed.
 
 
 69
 McALLISTER, Senior Circuit Judge (dissenting).
 
 
 70
 I am of the opinion that the proofs disclose that the sale of the securities in question were made within the State of Michigan, to residents of the State of Michigan by appellants, residents of the State of Michigan and doing business therein. There was no interstate sale of securities.
 
 
 71
 The Securities Exchange Act, 48 Stat. 906, exempted from its provisions, 'Any security which is a part of an issue sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.'
 
 
 72
 It is held in the prevailing opinion that the issuer of the securities was not doing business within the State of Michigan. The issuer was a life-long resident of the State of Michigan. He operated and staffed an office from which he offered and sold the securities in question. This office was maintained also for the transaction action of business in the oil and gas industry; and the business and management relating to the leases and oil wells in Ohio, here involved, were conducted from this office. Many of the purchasers of the securities inspected the oil wells in Ohio, or had their legal and tax counsel do so; others were experienced in the investment in oil securities; and others were personal friends of the issuer. All investors were provided either with information concerning these securities, substantially the same as that required by the Securities and Exchange Commission's General Instructions for the Use of Schedule D, used in the sale of working interests in oil and gas leases; or such information was readily available to them. None of the investors was solicited through the mails or by use of any advertising media.
 
 
 73
 In order to be subject to the jurisdiction of the court, there must be interstate trade or commerce in the securities or transportation, or communication relating to the securities among the several States or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia. 15 U.S.C.A. Section 77b(7).
 
 
 74
 There was no interstate commerce in securities in the above case. There was no interstate transportation relating to the securities in question; and there was no interstate communication relating to trade or commerce in such securities.
 
 
 75
 Although Securities Act Release No. 4434 is cited in support of the proposition that substantial operational activities must be performed in the state of incorporation in order that the securities of such corporation be exempt from the provisions of the Federal Securities Exchange Act, no language in the Act, itself, purports to provide that performance of substantial operational activities is an essential to a corporation's 'doing business' in the state of its incorporation. One can sustain an exemption from the provisions of an Act by merely showing that no language of the Act, specifically or by implication, applies to him.
 
 
 76
 As stated in the prevailing opinion, the proponents of the Act made it clear that it was not designed to apply to those securities which were being supervised effectively by State regulation; and nothing appears in this case to show that the securities issued were not being supervised effectively by State regulation, or would not be so supervised effectively in the future.
 
 
 77
 It is remarked in the prevailing opinion that this case presents a good illustration of the type of security transactions to which the Act was intended to apply due to the difficulty of supervision through State regulation, and that 'Even assuming that most of the books and records of the issuer were available to the Michigan Securities Commission for inspection, the income producing operations are located beyond the reach of the Michigan Commission's jurisdiction. Effective regulation of the offering might well have required inspection of the oil and gas wells located in Ohio, the questioning of persons engaged in drilling operations in Ohio, and familiarity with the geology of Ohio.' This and similar arguments do not appear persuasive. The Michigan law provides for such an inspection, and for the questioning of the aforementioned parties; and the Michigan Commission has jurisdiction over the income-producing operations of the oil and gas wells located in Ohio.
 
 
 78
 In the Blue Sky Law of Michigan (Uniform Securities Act) of 1964, (Section 19.776(401) (a) of the Michigan Statutes Annotated) C.L.Mich.1948, 451.801(a) (P.A.1964, No. 265), it is provided
 
 
 79
 "Administrator' means the Michigan corporation and securities commission, or any other agency authorized by law to enforce the provisions of this act.'
 
 
 80
 In Section 19.776(407) of the Michigan Statutes Annotated, C.L.Mich.1948, 451.807 (P.A.1964, No. 265), it is provided that such administrator in its discretion:
 
 
 81
 (1) May make such public or private investigations within or outside of this state as it deems necessary to determine whether any person has violated or is about to violate any provision of this act or any rule or order hereunder, or to aid in the enforcement of this act or in the prescribing of rules and forms hereunder.
 
 
 82
 (2) May require or permit any person to file a statement in writing, under oath or otherwise as the administrator determines, as to all the facts and circumstances concerning the matter to be investigated.
 
 
 83
 (3) May publish information concerning any violation of this act or any rule or order hereunder.
 
 
 84
 (b) For the purpose of any investigation or proceeding under this act, the administrator, or any officer designated by it, may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence and require the production of any books, papers, correspondence, memoranda, agreements or other documents or records which the administrator deems relevant or material to the inquiry.
 
 
 85
 (c) In case of contumacy by, or refusal to obey a subpoena issued to, any person, the circuit court for the county of Ingham, upon application by the administrator, may issue to the person an order requiring him to appear before the administrator, or the officer designated by it, there to produce documentary evidence if so ordered or to give evidence touching the matter under investigation or in question. Failure to obey the order of the court may be punished by the court as a contempt of court.
 
 
 86
 (d) No person is excused from attending and testifying or from producing any document or record before the administrator, or in obedience to the subpoena of the administrator, or any officer designated by it, or in any proceeding instituted by the administrator, on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after claiming his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that the individual testifying is not exempt from prosecution and punishment for perjury or contempt committed in testifying.
 
 
 87
 Other sections of the statute here applicable are set forth in the margin.[1]
 
 
 88
 These provisions of the Michigan Statutes disclose that the Michigan Corporation and Securities Commission may require inspection of the oil and gas wells located in Ohio; may question persons engaged in drilling operations in Ohio, and persons who are familiar with the geology of that State; and conduct a completely adequate investigation to secure a full disclosure of the affairs of the company whose income-producing operations are in another state; and the Michigan Commission has, not only the subpeona power but, the power to make a public or private investigation outside the state, administer oaths, compel attendance of witnesses, take evidence, issue cease and desist orders, and refer violations to the Attorney General of Michigan, who may institute the appropriate criminal proceedings under the Act.
 
 
 89
 Instead of being an example of the difficulty of supervision through State regulation as compared to supervision through federal regulation, it would seem that the Michigan Corporation and Securities Commission, dealing with a Michigan corporation, could better investigate, inspect, regulate, and supervise the security transactions relating to the oil wells in Ohio than the Federal Securities and Exchange Commission. A state commission, having jurisdiction, could ordinarily deal with greater dispatch in such a case than a federal commission. It would commence with a more intimate knowledge of the business transactions between citizens of the same state than a federal commission. Moreover, it would not be burdened with so many investigations, inspections, and such supervision as a federal commission. There is no reason in this case why it should be assumed that the securities and business of a Michigan company could be more effectively supervised by a federal commission than by the Michigan Corporation and Securities Commission. The State has a long history of Blue Sky legislation, and it has a competent staff, which has had much experience in these matters.
 
 
 90
 The mere circumstance that the drilling of an oil well is done in the State of Ohio does not detract from the fact that the appellant in this case-- a life-time resident of Michigan-- was doing business within the State of Michigan, since appellant operated and staffed the office in Michigan from which he offered and sold the securities in question to residents of Michigan, and carried on from this office the business in the oil and gas industry and the business and management aspects of the leases of the oil wells which were located in Ohio.
 
 
 91
 In my opinion, the judgment of the District Court should be reversed.
 
 
 
 [1]
 15 U.S.C. 77l(1):
 'Any person who-- '(1) offers or sells a security in violation of section 77e of this title, or * * * shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.'
 
 
 [2]
 Section 2(7), 15 U.S.C.A. 77b(7) defines 'interstate commerce:'
 '(7) The term 'interstate commerce' means trade or commerce in securities or any transportation or communication relating thereto among the several States or between the District of Columbia, or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia.'
 
 
 [1]
 Section 19.776(408) of the Michigan Statutes Annotated, C.L.Mich.1948, 451.808 (P.A.1964, No. 265) provides:
 '(Cease and desist order; injunction; mandamus; appointment of receiver or conservator.) Sec. 408. Whenever it appears to the administrator that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this act or any rule or order hereunder, it may in its discretion issue a cease and desist order or bring an action in the circuit court for the county of Ingham to enjoin the acts or practices and to enforce compliance with this act or any rule or order hereunder. Upon a proper showing a permanent or temporary injunction, restraining order, or writ of mandamus shall be granted and a receiver or conservator may be appointed for the defendant or the defendant's assets. The court may not require the administrator to post a bond.'
 Section 19.776(409) of the Michigan Statutes Annotated, C.L.Mich.1948, 451.809 (P.A.1964, No. 265), provides:
 '(Violation; punishment; prosecution.) Sec. 409. (a) Any person who wilfully violates any provision of this act except section 404, or who wilfully violates any rule or order under this act, or who wilfully violates section 404 knowing the statement made to be false or misleading in any material respect, shall upon conviction be fined not more than $5,000.00 or imprisoned not more than 3 years, or both.
 (b) The administrator may refer such evidence as is available concerning violations of this act or of any rule or order hereunder to the attorney general or the proper prosecuting attorney, who may, with or without such a reference, institute the appropriate criminal proceedings under this act.
 (c) Nothing in this act limits the power of the state to punish any person for any conduct which constitutes a crime by statute or at common law.'