**SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,**

**v.**

**McDONALD INVESTMENT CO. and H.
J. McDonald, Defendants.**

**No. 4–72 Civ. 132.**

United States District Court,
D. Minnesota,
Fourth Division.

May 26, 1972.

———◆———

Donald Dreyfus, Chicago, Ill., for plaintiff.

Melvin R. Harris, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION

NEVILLE, District Judge.

The question presented to the court is whether the sale exclusively to Minnesota residents of securities, consisting of unsecured installment promissory notes of the defendant, a Minnesota corporation, whose only business office is situate in Minnesota, is exempt from the filing of a registration statement under § 3(a) (11) of the 1933 Securities Act, 15 U.S.C. § 77c, when the proceeds from the sale of such notes are to be used principally, if not entirely, to make loans to land developers outside of Minnesota. Though this is a close question, the court holds that such registration is required and the defendants have not satisfied their burden of proving the availability of an exemption under the Act; this despite the fact that the securities have heretofore been duly registered with the Securities Commissioner of the State of Minnesota for whom this court has proper respect.

Plaintiff, the Securities and Exchange Commission, instituted this lawsuit pursuant to 15 U.S.C. § 77t(b), or § 20(b) of the 1933 Securities Act. The defendants are McDonald Investment Company, a Minnesota corporation, and H. J. McDonald, the company's president, treasurer, and owner of all the company's outstanding common stock. Plaintiff requests that the defendants be permanently enjoined from offering for sale and selling securities without having complied with the registration requirements of Section 5 of the Act, 15 U.S.C. § 77e.

Plaintiff and defendants have stipulated to the following pertinent facts: The defendant company was organized and incorporated in the State of Minnesota on November 6, 1968. The principal and only business office from which the defendants conduct their operations is located in Rush City, Minnesota, and all books, correspondence, and other records of the company are kept there.

Prior to October 19, 1971, the defendants registered an offering for $4,000,000 of its own installment notes with the Securities Division of the State of Minnesota pursuant to Minnesota law. The prospectus offering these installment notes became effective on October 19, 1971 by a written order of the Minnesota Commissioner of Securities making the registration and prospectus effective following examination and review by the Securities Division. Sales of the installment notes, according to the amended prospectus of January 18, 1972, are to be made to Minnesota residents only. Prior to the institution of this action, the defendants were enjoined from their past practices of selling, without Securities and Exchange Commission registration, notes secured by lien land contracts and first mortgages on unimproved land located at various places in the United States, principally Arizona. The defendant company is said to have sold $12,000,000 of such to some 2,000 investors. The present plan contemplates that those purchasing defendant company's securities henceforth will have only the general unsecured debt obligation of the company, though the proceeds from the installment notes will be lent to land developers with security taken from them in the form of mortgages or other liens running to the defendant corporation. The individual installment note purchasers will not, however, have any direct ownership or participation in the mortgages or other lien security, nor in the businesses of the borrowers.

No registration statement as to the installment notes described in McDonald Investment Company's amended prospectus is in effect with the United States Securities and Exchange Commission, nor has a registration statement been filed with the Commission. Furthermore, the defendants will make use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell and offer to sell the installment notes though only to residents of Minnesota.

Section 5 of the 1933 Act, 15 U.S.C. § 77e in general makes it illegal to offer or sell a security unless a registration statement containing the prescribed information has been filed with the Commission. Section 3(a) (11) of the Act, 15 U.S.C. § 77c, however, sometimes called the intrastate exemption, exempts from registration:

"(11) Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory."

The legislative history and the caption to the Act itself indicates that the primary purpose for the passage of the Securities Act of 1933 was:

"To provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes." 48 Stat. 74 (1933).

The plaintiff predicates its claim for a permanent injunction on the ground that the defendants will be engaged in a business where the income producing operations are located outside the state in which the securities are to be offered and sold and therefore not available for the 3(a) (11) exemption. Securities and Exchange Commission v. Truckee Showboat, 157 F.Supp. 824 (S.D.Cal. 1957); Chapman v. Dunn, 414 F.2d 153 (6th Cir. 1969). While neither of these cases is precisely in point on their facts, the rationale of both is clear and apposite to the case at bar.

In *Truckee* the exemption was not allowed because the proceeds of the offering were to be used primarily for the purpose of a new unrelated business in another state, i. e., a California corporation acquiring and refurbishing a hotel in Las Vegas, Nevada. Likewise, in *Dunn* the 3(a) (11) exemption was unavailable to an offering by a company in one state, Michigan, of undivided fractional oil and gas interests located in another state, Ohio. The *Dunn* court specifically stated at page 159:

" . . . in order to qualify for the exemption of § 3(a) (11), the issuer must offer and sell his securities only to persons resident within a single State and the issuer must be a resident of that same State. *In addition to this, the issuer must conduct a predominant amount of his business within this same State.* This business which the issuer must conduct within the same State refers to the income producing operations of the business in which the issuer is selling the securities . . . ." [Emphasis added]

This language would seem to fit the instant case where the income producing operations of the defendant, after completion of the offering, are to consist entirely of earning interest on its loans and receivables invested outside the state of Minnesota. While the defendant will not participate in any of the land developer's operations, nor will it own or control any of the operations, the fact is that the strength of the installment notes depends perhaps not legally, but practically, to a large degree on the success or failure of land developments located outside Minnesota, such land not being subject to the jurisdiction of the Minnesota court. The investor obtains no direct interest in any business activity outside of Minnesota, but legally holds only an interest as a creditor of a Minnesota corporation, which of course would be a prior claim on the defend-

ant's assets over the shareholder's equity, now stated to be approximately a quarter of a million dollars.

This case does not evidence the deliberate attempt to evade the Act as in the example posed by plaintiff of a national organization or syndicate which incorporates in several or many states, opens an office in each and sells securities only to residents of the particular state, intending nevertheless to use all the proceeds whenever realized in a venture beyond the boundaries of all, or at best all but one of the states. See Securities & Exchange Commission v. Los Angeles Trust Deed & Mortgage Exchange, 186 F.Supp. 830, 871 (S.D.Cal.1960), aff'd 285 F.2d 162 (9th Cir. 1960). Defendant corporation on the contrary has been in business in Minnesota for some period of time, is not a "Johnny come lately" and is not part of any syndicate or similar enterprise; yet to relieve it of the federal registration requirements where none or very little of the money realized is to be invested in Minnesota, would seem to violate the spirit if not the letter of the Act.

Persuasive language is found in the Securities and Exchange Commission Release No. 4434, December 6, 1961, relating to exemptions for local offerings:

"The legislative history of the Securities Act clearly shows that this exemption was designed to apply only to local financing that may practicably be consummated in its entirety within the state or territory in which the issuer is both incorporated and doing business." at p. 40

"In view of the local character of the section 3(a) (11) exemption, the requirement that the issuer be doing business in the state can only be satisfied by the performance of substantial operational activities in the state of incorporation. The doing business requirement is not met by functions in the particular state such as bookkeeping, stock record and similar activities or by offering securities in the state. Thus, the exemptions would be unavailable to an offering by a company made in the state of its incorporation of undivided fractional oil and gas interests located in other states even though the company conducted other business in the state of its incorporation. . . . Similarly, an intrastate exemption would not be available to a 'local' mortgage company offering interests in out-of-state mortgages which are sold under circumstances to constitute them investment contracts. . . .

If the proceeds of the offering are to be used primarily for the purpose of a new business conducted outside of the state of incorporation and unrelated to some incidental business locally conducted, the exemption should not be relied upon. S.E.C. v. Truckee Showboat, Inc., 157 F.Supp. 824 (S.D. Cal.1957). So also, a section 3(a) (11) exemption should not be relied upon for each of a series of corporations organized in different states where there is in fact and purpose a single business enterprise or financial venture whether or not it is planned to merge or consolidate the various corporations at a later date. S.E.C. v. Los Angeles Trust Deed & Mortgage Exchange et al., 186 F.Supp. 830, 871 (S.D.Cal.1960), aff'd 285 F.2d 162 (C.A.9, 1960)." at pp. 41–42

■ Exemptions under the Act are strictly construed, with the burden of proof on the one seeking to establish the same. Securities and Exchange Commission v. Culpepper, 270 F.2d 241, 246 (2d Cir. 1959); Securities and Exchange Commission v. Ralston Purina Co., 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1954); Securities and Exchange Commission v. Sunbeam Gold Mines Co., 95 F.2d 699, 701 (9th Cir. 1938).

Defendant notes that agreements with land developers will by their terms be construed under Minnesota law; that the income producing activities will be the earning of interest which occurs in Minnesota; that the Minnesota registra-

tion provides at close proximity all the information and protection that any investor might desire; that whether or not registered with the Securities and Exchange Commission, a securities purchaser has the protection of 15 U.S.C. § 77e which attaches liability to the issuer whether or not registration of the securities are exempted for fraudulent or untrue statements in a prospectus or made by oral communications; that plaintiff blurs the distinction between sale of securities across state lines and the operation of an intrastate business; and that if injunction issues in this case it could issue in any case where a local corporation owns an investment out of the particular state in which it has its principal offices and does business such as accounts receivable from its customers out of state. While these arguments are worthy and perhaps somewhat more applicable to the facts of this case than to the facts of *Truckee* and *Chapman, supra*, on balance and in carrying out the spirit and intent of the Securities Act of 1933, plaintiff's request for a permanent injunction should be granted.

A separate order has been entered.