391 F.Supp. 927 (1975)
John W. EHRLER et al., Plaintiffs,
v.
KELLWOOD COMPANY, a corporation, and Jerome H. Klenke, Defendants.
No. 74-27 C (1).
United States District Court, E. D. Missouri, E. D.
January 6, 1975.
*928 Merle L. Silverstein, Rosenblum & Goldenhersh, Clayton, Mo., for plaintiffs.
Donald W. Bird and Peter H. Ruger, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., Melvin Friedman, Friedman & Fredericks, Clayton, Mo., for defendants.

MEMORANDUM
MEREDITH, Chief Judge.
This matter was tried to the Court without a jury. The Court has been duly advised by the evidence and the briefs of the parties. Aquarius Plastics Corporation is a Missouri corporation, organized in 1971. Eight persons, including the five plaintiffs and defendant Jerome H. Klenke, were the original shareholders in said corporation. A total of 100,000 shares were issued and outstanding. On April 3, 1973, the entire 100,000 shares of Aquarius were acquired by defendant Kellwood Company (Kellwood) at a price of $1.65 per share.
The original investment in Aquarius in 1971 was a total of $40,000. Defendant Klenke signed a three-year employment contract with Aquarius, which contained clauses that he would spend his full time for Aquarius and would not compete with Aquarius during the three-year term. He received, under the terms of the contract, a salary as president of the company, and, additionally, he received 18,000 shares of Aquarius stock without charge. Each of the plaintiffs in this action invested $5,000 in the corporation originally, except plaintiff Knobbe, who invested $10,000. The stock of plaintiffs at the time of the sale on April 3, 1973, was sold by the plaintiffs as follows:

 Shares Original Sale Price
 Sold Investment of stock 
Ehrler 15,325 $ 5,000.00 $25,286.25
Knobbe 20,650 10,000.00 34,072.50
Shelley 10,325 5,000.00 17,036.25
Maurer 10,325 5,000.00 17,036.25
Powers 10,325 5,000.00 17,036.25

In late 1972, dissension arose in the company, and on January 11, 1973, defendant Klenke was removed from his position as president as a result of disagreement on policy matters and because the plaintiffs lacked confidence in defendant Klenke's business judgment. Plaintiff Ehrler replaced Klenke as president of the company. Late in the year 1972, the disputes on the Board of Directors became so severe that it was determined to find a buyer for the corporate stock. Ads were placed in the Wall Street Journal and a number of offers were received  fifty-five cents per share, seventy-five cents per share  and in January of 1973, defendant Kellwood offered $1.30 per share. These offers were all rejected by the stockholders.
In January of 1973, Aquarius was running at full capacity and the stockholders of Aquarius would not put in any more funds. Defendant Kellwood was purchasing approximately fifty percent of Aquarius' output. Klenke was dealing with Kellwood on behalf of Aquarius and plaintiff Ehrler was negotiating with Chris Kay Plastics Manufacturing Company (hereinafter Chris Kay), and on February 28, 1973, both Chris Kay and Kellwood made purchase offers of $1.60 per share at a February 28, 1973, meeting of Aquarius directors and shareholders. Both Ehrler and Klenke were instructed to attempt to obtain $1.65 per share from each company. Chris Kay and Kellwood were called on the telephone and top offers were received from both companies for *929 Aquarius stock of $1.65 per share. At the February 28, 1973, meeting, the stockholders were informed that Kellwood's purchase offer was contingent upon Klenke entering into an employment agreement with Kellwood to operate Aquarius after the acquisition. The stockholders agreed to accept Kellwood's offer and to sell all the stock to Kellwood at $1.65 per share. Klenke had advised that he would not work for Chris Kay.
On March 1, 1973, Mr. William N. Kelley of Kellwood mailed to each shareholder a letter containing an Agreement in Principle, which set out that the contract was contingent upon Klenke entering into an employment contract for a period of three years, and provided that Klenke would receive a salary "and such additional compensation and known Kellwood Employment Benefits as may be granted by the Compensation Committee of Kellwood." The Agreement in Principle provided that the closing of the transaction was contemplated not later than April 1, 1973, and would be submitted to the Kellwood Board on March 19, 1973. On March 13, 1973, amendment to the Agreement in Principle was mailed to each of the shareholders.
On March 5, 1973, Kelley of Kellwood wrote a letter to Klenke agreeing to permit Klenke to purchase fifty percent of Aquarius stock for $1.65 a share. This was accepted and approved by Klenke on March 29, 1973. Plaintiffs were not advised of this arrangement.
On March 13, 1973, Kelley had a meeting with plaintiffs Ehrler and Knobbe and told them in response to a question that key managers, such as Klenke, would have an option to purchase stock in the company. Kelley did not tell them that Klenke would own fifty percent of the stock and they did not inquire. There was also a discussion at that time concerning certain bad debts of the company and other aspects of the purchase.
On March 18, 1973, the plaintiffs advised Klenke that unless he returned 5,600 shares of his 18,000 shares of stock to the corporation, they would not enter into the final contract with Kellwood. On March 22, 1973, Klenke turned in to the corporation 5,600 shares and entered into an agreement which provided that the 5,600 shares would be divided among the other shareholders. This contract contained the following clause:
"Seven. The parties hereto hereby further mutually agree to hold the others harmless from any liability for any action taken by the other either individually or as members of the Board of Directors in the conduct of the business of the corp. whether said action be properly or improperly taken or authorized or unauthorized."
On April 1, 1973, a formal agreement was entered into among all of the stockholders of Aquarius to sell their stock to Kellwood and the sale was consummated on April 3, 1973.
On April 11, 1973, a press release was issued by Kellwood, disclosing that Klenke would own fifty percent of Aquarius, and announcing that Kellwood had acquired Aquarius. Some of the plaintiffs, after this press release was issued, went to see a lawyer, and in November of 1973 a letter was written by plaintiffs' lawyer to Kellwood and a suit was filed in January 1974.
Plaintiffs bring this suit under section 10 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5 of the General Rules and Regulations thereunder (17 C.F.R., section 240.10b-5). Plaintiffs seek to have the stock purchase rescinded on the grounds that defendants Kellwood and Klenke did not disclose that Klenke was purchasing fifty percent of the stock of Aquarius, which, they contend, is fraud and misrepresentation. They also ask for an accounting for the profits, attorneys' fees, and costs.
Defendant Klenke has filed a counterclaim in this cause requesting attorneys' fees and damages as a result of the breach of the contract, dated March 22, *930 1973, which was signed by all of the stockholders, including the plaintiffs.
At the time Aquarius was sold on April 3, 1973, $165,000 was a premium price for the company, which had a book value of approximately $75,000. Book value should be reduced by a bad debt of $18,000 and no provision was made for the payment of taxes.
This Court is of the opinion it has jurisdiction over this cause under section 10 of the Securities and Exchange Act of 1934 and Rule 10b-5, since the mails were used in consummating this transaction. Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967). However, the Court is of the opinion that the failure of Klenke to disclose his intended purchase of fifty percent of the stock is not material under the circumstances of this particular case. City National Bank of Fort Smith, Ark. v. Vanderboom, 422 F.2d 221 (8th Cir. 1970). The company was to be sold and all parties wanted to get the best price and $165,000 was the best price obtainable. The plaintiffs were aware that Klenke was to get some rights to purchase stock. They did not inquire how much stock he was to purchase and, in spite of their testimony to the contrary, they did not rely on the fact that Klenke was a buyer rather than a seller of Aquarius stock in reaching their decision to sell. The plaintiffs had fired Klenke as president because they did not trust him, so there is no reason to believe they relied on his judgment. Kellwood had no duty to the plaintiffs to disclose to them what agreement it entered into with Klenke.
Plaintiffs themselves have come into court with unclean hands in that they forced Klenke to turn over 5,600 shares of Aquarius stock without any legal reason, and they entered into a contract which bars recovery under the Securities and Exchange Act. Kuehnert v. Texstar Corp., 412 F.2d 700 (5th Cir. 1969); Manufacturers' Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982 (1935).
By April 11, 1973, all of the plaintiffs were aware that Klenke had purchased fifty percent of Aquarius stock. They sat idly by and took no action and permitted Kellwood to spend or obligate itself for $600,000 to modernize the equipment and double the capacity of the plant of Aquarius. Suit was filed and up to the time of trial, none of the plaintiffs offered to tender the money the plaintiffs had received for the sale of the Aquarius stock. Under these conditions, recission is not a proper remedy. Chapman v. Dunn, 414 F.2d 153 (6th Cir. 1969); Stadia Oil & Uranium Co. v. Wheelis, 251 F.2d 269 (10th Cir. 1957); Baumel v. Rosen, 283 F.Supp. 128 (D.Md.1968), modified at 412 F.2d 571 (4th Cir. 1969). The facts in this case are substantially different than those in Rochez Bros., Inc. v. Rhoades, 491 F.2d 402 (3rd Cir. 1974).
While the plaintiffs here do not ask for damages, the maximum damages available to them would be the difference between the fair market value of their shares at the time they were sold, less the amount they received for their shares. Under the facts in this case, their damages would be zero, since the plaintiffs received the fair market value at the time they sold their shares in Aquarius. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).
The plaintiffs' complaint will be dismissed with prejudice and the defendant Klenke's counterclaim will be dismissed with prejudice. Costs in this action will be assessed against the plaintiffs.