470 F.Supp. 173 (1979)
Alvin J. SHAPIRO and Jeanne K. Shapiro, as Joint Tenants on behalf of themselves and all others similarly situated and derivatively on behalf of Midwest Rubber Reclaiming Co., Plaintiffs,
v.
MIDWEST RUBBER RECLAIMING COMPANY, Midcon Industries, Inc., f/k/a Goodrich Realty & Development Group, Inc., Carl H. Totsch, Richard M. Cohen, Morris Weissman, Michael Miller, Stanley Kreitman, Defendants.
No. 75-932C (1).
United States District Court, E. D. Missouri, E. D.
May 2, 1979.
*174 Lowell E. Sachnoff, Sachnoff, Schrager, Jones & Weaver, Ltd., Chicago, Ill., John L. Davidson, Greenfield, Davidson, Mandelstamm & Voorhees, St. Louis, Mo., for plaintiffs.
Thomas L. Croft, Kenneth R. Heineman, Coburn, Croft, Shepherd & Herzog, Jerome I. Kaskowitz, Sidel, Sandweiss & Kaskowitz, St. Louis, Mo., Melvyn L. Cantor, Simpson, Thacher & Bartlett, New York City, Michael Fisher, Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for defendants.

MEMORANDUM
MEREDITH, Chief Judge.
This matter is before the Court on the motion of defendants Midwest Rubber Reclaiming Company (Midwest), Midcon Industries, Inc. f/k/a Goodrich Realty and Development Group, Inc. (Midcon), Carl H. Totsch, Richard M. Cohen, Morris Weissman, Michael Miller and Stanley Kreitman, for summary judgment in their favor against plaintiffs and the class they represent in Count I and against plaintiffs in their derivative suit in Count II. For the reasons stated below, defendants' motion will be granted.
Plaintiffs, residents of Cook County, Illinois, originally brought this action in the Northern District of Illinois on June 24, 1975, both directly and derivatively, on behalf of themselves and all others similarly situated, to enforce rights created by the federal securities laws and also various pendent and diversity claims arising under state law. The federal securities laws relied on include Section 17(a) of the Securities Act of 1933 (hereinafter Securities Act), 15 U.S.C. § 77q; Section 10(b) of the Securities Exchange Act of 1934 (hereinafter Exchange Act), 15 U.S.C. § 78j; Section 13(d) of the Exchange Act, 15 U.S.C. § 78m; Sections 14(a) and (e) of the Exchange Act, 15 U.S.C. §§ 78n(a) and (e), and Rules 10b-5, 14a-3, and 14a-9, 17 C.F.R. §§ 240.10b-5, 240.14a-3, and 240.14a-9, which were promulgated by the Securities and Exchange Commission (hereinafter S.E.C.) under the Exchange Act.
On October 17, 1975, the action was transferred to this Court. On October 19, 1976, the plaintiffs filed their first amended complaint. Jurisdiction over this matter was asserted under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and under the principle of pendent jurisdiction.
*175 In this Court's order of September 29, 1977, plaintiffs' state common law claims, brought under pendent jurisdiction, were dismissed. Plaintiffs filed their second amended complaint on October 18, 1977.
On June 8, 1978, as modified on July 12, 1978, this Court certified plaintiffs' action under Count I as a class action under Rule 23, Fed.R.Civ.P. The class was certified to consist of all persons who owned shares of common stock in Midwest Rubber Reclaiming Company on March 20, 1975, and who did not sell or exchange their stock during the period that the March 20, 1975, tender offer was outstanding (that is, up to and including May 30, 1975) and who did not sell their stock pursuant to the December 8, 1975, cash tender offer which expired on December 28, 1975.
The alleged violations of the federal securities laws in this case arise in the context of a series of exchange offers and merger proposals concerning defendants Midwest and Midcon. The following facts and allegations, which for the purpose of considering the motion for summary judgment are resolved in favor of the plaintiffs, regarding the exchange offers and merger proposal and finally the actual merger are relevant to the defendants' motion for summary judgment.
Plaintiffs allege that defendant Midcon is incorporated under and exists by virtue of the laws of the State of Delaware, and that at the time of the exchange offer described herein, Midcon owned at least 226,076 shares of common stock of Midwest, which constituted at least fifty-one percent of the outstanding voting shares of Midwest prior to the exchange offer and which constituted at least seventy-two percent of the outstanding voting shares of Midwest after the consummation of the exchange offer. Midcon after the exchange offer allegedly owned 82.4 percent of the common stock of Midwest. Plaintiffs claim that, at all times relevant herein, defendant Cohen (whose interest in the company, aggregated with his sister's, amounts to owning 70 percent of the stock of Midcon) was chairman of the board of both Midwest and Midcon, and president of Midcon; Weissman was a director of Midwest, and vice president and secretary of Midcon; Totsch was a director and the president of Midwest; Stanley Kreitman was a director of Midwest; Miller was a director of Midwest and vice president of Midcon; and J. Baxter Brinkmann, a former director of Midwest. The earlier claims against Eugene Williams, Jr., Howard R. Erwin, and Basil Georges are not included in the second amended complaint.
Plaintiffs claim that sometime prior to April 9, 1974, defendants Midcon, Cohen, Weissman, Miller, and others unknown to plaintiffs, conspired to gain sufficient control of Midwest so as to appropriate the assets of Midwest for the benefit of Midcon. Plaintiffs claim that, in furtherance of this alleged conspiracy, Midcon purchased 226,076 shares of Midwest's common stock between April 9, 1974, and September 30, 1974.
Of these 226,076 shares, 220,776 shares were allegedly acquired in private transactions between April 9, 1974, and September 30, 1974, at a price stated by Midwest in the exchange offer to be $15.00 per share. The remaining 5,300 shares were allegedly acquired by Midcon on the open market between April 19, 1974, and July 8, 1974, at market prices ranging from $12.125 to $13.00. In connection with these purchases, Midcon filed with the Securities and Exchange Commission schedules, pursuant to Rule 13d-1. The first of these was filed on April 18, 1974.
It is alleged that during the period of Midcon's private transaction purchases, the price of Midwest ranged from $7.375 to $13.75 per share; thus, the private sellers of Midwest shares to Midcon allegedly received premiums ranging from $1.25 up to $7.625 per share over the then current market price. At least two of the sellers of Midwest shares to Midcon were allegedly directors of Midwest at the time of the sales, and a third seller was a company affiliated with Brinkmann. No director transferred a controlling block of stock of Midwest to Midcon. Brinkmann and each selling director allegedly resigned their positions *176 as directors of Midwest in favor of nominees of Midcon immediately after the sale of Midwest shares to Midcon. Plaintiffs claim that the acquisitions of the Midwest stock were directed by Cohen as Midcon's controlling stockholder, and were effected in furtherance of the personal interests of Cohen, rather than the benefits of the minority stockholders of Midcon.
Defendants Cohen and Weissman were elected to the board of directors of Midwest on April 17, 1974, and defendant Miller was elected to Midwest's board on June 3, 1974. These elections were allegedly made possible by the vacancies created on the Midwest board by the "buy-outs" referred to above. Plaintiffs claim that on September 10, 1974, Cohen and the other individual defendants caused Midwest to announce a plan which provided for the issuance of Midwest's twelve percent subordinated debentures, due 1995, in the principal amount of $12.00, in exchange for each outstanding share of Midwest common stock not held by Midcon.
On September 23, 1974, Midcon filed an amendment to its schedules, pursuant to Rule 13d-1, with respect to its stockholdings of Midwest, wherein Midcon allegedly noted: (1) the pendency of an exchange offer by Midwest; (2) that the effect of the offer would be to increase Midcon's percentage ownership of the common stock of Midwest; and (3) that "should all the shares of the common stock of Midwest not be tendered pursuant to the exchange offer, Goodrich Realty [Midcon] may purchase additional shares of Midwest common stock or merge Midwest into Goodrich Realty or a subsidiary thereof."
Plaintiffs allege that in furtherance of the defendants' conspiracy to appropriate the assets of Midwest for the benefit of Midcon and to the economic detriment of members of the class, the individual defendants caused Midwest to circulate to members of the alleged class its 1975 proxy. Plaintiffs claim that the 1975 proxy was false and misleading, and in violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rules 14a-3 and 14a-9 thereunder, 17 C.F.R. §§ 240.14a-3 and 240.14a-9.
On March 20, 1975, Midwest made the exchange offer to its stockholders providing for the exchange of each share of Midwest common stock for a $12.00 principal amount twelve percent subordinated debenture of Midwest. The offer, after an extension, was terminated May 30, 1975. The closing price of Midwest on the American Stock Exchange on May 19, 1975, was allegedly $7.375. Plaintiffs claim that the market valued each $12.00 principal amount twelve percent subordinated debenture at approximately $7.375, because it was possible on that date to purchase Midwest common stock in the market for that price and tender it for exchange pursuant to the exchange offer. The plaintiffs note that $7.375 is substantially less than: (1) the net current asset value per common share of Midwest, which was $13.14 on October 31, 1974; (2) the net book value per common share of Midwest, which was $23.29 on October 31, 1974; and (3) the price paid months earlier by Cohen, or Midcon, to the selling directors for their shares, $15.00. The remaining shares of Midwest stock continued to be traded at this depressed level, and were allegedly quoted on the date of this complaint at a bid of $8.40. Plaintiffs claim that the purpose of the exchange offer was to permit Midcon to operate Midwest for the primary or sole benefit of Cohen and Midcon.
Plaintiffs allege that the exchange offer sought to purchase 211,057 shares of Midwest, all the outstanding shares not then owned by Midcon, and by the terms of the offer, if 155,000 shares were tendered, Midwest was under an obligation to accept those shares tendered. The result of the tender of 155,000 shares of Midwest would have allegedly left less than 56,000 shares of Midwest in the hands of the public. Further, plaintiffs claim that Midwest was listed on the American Stock Exchange prior to the exchange offer, but that since an aggregate of 126,692 shares of Midwest were tendered and accepted pursuant to the offer, Midwest fell below the criterion for listing on the American Stock Exchange, *177 and its common stock was delisted on July 28, 1975.
Plaintiffs claim that Midcon and the individual defendants have threatened to have Midwest merged into Midcon (see below), or a subsidiary thereof, unless Midwest, through a tender offer, buys up enough shares to give Midcon an eighty percent interest in the outstanding shares. The exchange offer allegedly stated that it was the present intention of Midwest's board of directors to increase the dividends on the common stock after the completion of the exchange offer. However, plaintiffs allege Midcon subsequently caused Midwest to enter into loan agreements which restricted or eliminated funds available for the payment of dividends to Midwest stockholders. Plaintiffs contend that this conduct constitutes violations of Sections 14(a) and 14(e) of the Exchange Act, 15 U.S.C. §§ 78n(a) and 78n(e), and Rules 14a-3 and 14a-9 thereunder, 17 C.F.R. §§ 240.14a-3 and 240.14a-9.
Plaintiffs allege that defendants, individually, in concert, and in aiding and abetting of one another, have made untrue statements of material facts, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; plaintiffs further allege that defendants have engaged in fraudulent, deceptive, and manipulative acts and practices in connection with the exchange offer and the subsequent exchange of the debentures for the common stock previously held by those receiving the offering circular. Plaintiffs claim that this alleged conduct constitutes violations of Section 14(e) of the Exchange Act, 15 U.S.C. § 78n(e).
Plaintiffs further allege that the offering circular accompanying the exchange offer stated that participation in the offer was "completely voluntary" and that this was false and misleading, as shareholders were unwillingly forced to either give up their equity or remain stockholders in a delisted company with a large debt, subject to merger, not subject to S.E.C. disclosure requirements and being abused to the benefit of Midcon, all of which was allegedly objectively unfair as forcing a change in the form of the stockholder's investments, as well as the value.
In support of plaintiffs' derivative action brought on behalf of Midwest, plaintiffs allege that a demand upon the directors of Midwest to take remedial steps to rectify plaintiffs' alleged injury would be futile, since Midwest is controlled by the defendants and has allegedly indicated that it believes that its conduct violates no law or statute. Plaintiff further alleges that this Court has jurisdiction over this claim under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as an action to rectify violations of the Exchange Act and the rules promulgated thereunder, and under the doctrine of pendent jurisdiction.
Additionally, plaintiffs allege that the acts of the defendants were taken at the expense of Midwest and for the benefit of the individual defendants and Midcon, and in taking such actions, the defendants have violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and the rules promulgated thereunder.
Plaintiffs also claim that the Schedule 13(d) statement filed by Midcon was false and misleading, and contained material omissions and, therefore, amounted to a violation of Section 13(d) of the Exchange Act, as well as the rules promulgated thereunder.
Plaintiffs seek monetary damages for all the members of the class equivalent to the $15.00 per share received by the selling directors, as well as alternative damages and injunctive relief.
Subsequent to the exchange offer, Midwest, on December 8, 1975, made a separate and distinct cash tender offer to its public shareholders to purchase a certain number of shares of its outstanding stock at $9.25 per share. Those shareholders who tendered pursuant to this offer were eliminated from the class action. Those plaintiffs who remain as part of the class chose not to tender their Midwest stock and do not challenge the legality of that tender offer.
*178 On March 15, 1978, the common shareholders of Midwest voted upon and approved a merger wherein each outstanding share of Midwest common stock not owned by Midcon was converted into a $45.00 principal amount Midwest 10 percent subordinated debenture due 1998. An investment banking firm has submitted its opinion that this debenture has a present market value of $40.00. The legality of this merger is not challenged by the plaintiffs.
Defendants have moved for summary judgment on Count I on the basis that plaintiffs have sustained no damages from the complained of actions in that they have already received and are entitled to receive for their as yet untendered stock a debenture worth well in excess of the $15.00 per share that plaintiffs seek for their stock in the complaint. Defendants move for summary judgment on Count II on the basis that as a result of the unchallenged merger between Midwest and Newco, Inc., a wholly owned subsidiary of Midcon, there have been no public shareholders of Midwest since March 15, 1978. Thus, plaintiffs, no longer being public shareholders of Midwest have no interest or standing to seek any derivative relief on behalf of Midwest, and the plaintiffs would not benefit from any such relief.
Plaintiffs oppose summary judgment on Count I on the basis that their damages from the alleged fraud should be measured as of 1975, the date the fraud was made public or when a reasonable plaintiff did or should have discovered the wrongdoing. Plaintiffs argue that a 1978 debenture is irrelevant to the measure of damages and should be disregarded. Plaintiffs also oppose summary judgment on Count II on the basis that the forced exchange of their shares of Midwest (plaintiffs have not as of yet tendered all of their shares) for debentures does not deprive them of standing to pursue a derivative suit on behalf of Midwest.
In order for summary judgment to be granted, the movant must clearly establish that there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Alcala v. Burns, 545 F.2d 1101, 1106 (8th Cir. 1976), cert. denied sub nom., Doe v. Burns, 431 U.S. 920, 97 S.Ct. 2187, 53 L.Ed.2d 232 (1977).
In order to successfully maintain an action under the federal securities laws a party must show damages as a result of the complained of acts. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Mills v. Electric Auto-Lite, 396 U.S. 375, 389, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).
Section 28(a) of the Securities Exchange Act, 15 U.S.C.A. § 78bb(a), provides that "no person permitted to maintain a suit for damages under the provisions of this chapter shall recover . . . a total amount in excess of his actual damages on account of the act complained of." Where plaintiffs are sellers of securities, as in this case, the measure of damages in a case alleging fraud under the securities laws is "the difference between the fair market value of their [sellers'] shares at the time they were sold, less the amount they received for their shares." Ehrler v. Kellwood Company, 391 F.Supp. 927, 930 (E.D. Mo.), aff'd, 521 F.2d 1347 (8th Cir. 1975). Under this formulation of the measure of damages, plaintiffs clearly can establish no damages under Count I of the second amended complaint. Plaintiffs' claim of damages, the difference between $15.00 and $7.375 for shares of stock not sold in 1975, is clearly obviated by the amount they will receive/received at the time of sale, (a result of the merger) a $45.00 principal amount 10 percent subordinated debenture due 1998 which was valued at approximately $40.00 on the date of the merger. Accordingly, as a result of the merger which has come about since plaintiffs' filing of their second amended complaint, the legality of which is not challenged, the plaintiffs became entitled to receive a debenture worth more than the amount they claim they were damaged. Plaintiffs have set forth no other claimed damages to raise a *179 question of fact that they are damaged as a result of the merger and conversion of their stock into debentures. Plaintiffs' theory that damages should be measured as of 1975  the difference between the $15.00 offered to the directors in 1974 and the value of debentures offered to them in 1975, $7.375  the date the fraud was made public or when a reasonable plaintiff did or should have discovered the wrongdoing, is inapplicable, as this is a measure of damages involving defrauded buyers. Harris v. American Investment Company, 523 F.2d 220 (8th Cir. 1975).
As plaintiffs are sellers and not buyers of securities, as set out in the class action certification, the measure of damages as set out in Ehrler is applicable, and under that standard plaintiffs have shown no damages. As no question of fact remains with respect to Count I, defendants are entitled to summary judgment as a matter of law. Affiliated Ute, supra.
Count II of plaintiffs' second amended complaint purports to assert a derivative action on behalf of Midwest. Although the Court agrees with plaintiffs that they are not deprived of their capacity to sue derivatively by reason of the merger, the Court finds that plaintiffs are unable to maintain their action under Count II because no damages can be shown to the corporation. Plaintiffs have not challenged the validity of the merger between Newco, Inc. and Midwest. As set out above, the Court finds as a matter of law that the shareholders of Midwest have also sustained no damages. Accordingly, summary judgment for defendants is appropriate as to Count II as no damages can be shown. Rule 56(b), Fed.R.Civ.P.