**Richard C. LOUGH, Petitioner,**

v.

**Elmer T. KLASSEN, Postmaster General, et al., Respondent.**

**Civ. No. 1026.**

United States District Court,
D. Montana,
Billings Division.

Sept. 6, 1972.

Gerald J. Neely (Towe, Neely & Ball), Billings, Mont., for plaintiff.

Eugene A. Lalonde, Asst. U. S. Atty., Billings, Mont., for defendants.

## MEMORANDUM OPINION AND ORDER

BATTIN, District Judge.

The petitioner herein seeks review of two decisions by the Board of Contract Appeals. One decision upheld the Postal Service's termination of his contract for the transportation of the mails along Star Route 59143, between Billings, Montana, and Yellowstone Park. The other held that the petitioner had accepted $6.42 as indemnity for non-performance of services on two days when mail service was curtailed. Petitioner contends that the administrative agency erroneously arbitrarily, capriciously and without substantial evidence affirmed the orders of the contracting officer. Jurisdiction of this court to review the decisions of the Board of Contract Appeals, though not contested, is conferred by 5 U.S.C. §§ 702 and 703.

The Government has moved to dismiss and for summary judgment. The Government has advanced several grounds in support of its motion to dismiss, but discussion of the grounds raised for dismissal is not required because this court finds the respondent is entitled to summary judgment. The grounds raised, though concerning the jurisdiction of this court to review the matter, were without merit and do not affect the power of this court to grant summary judgment in this case[1].

The standard for review of agency decision is contained in 41 U.S.C. § 321, which section provides in pertinent part that decisions regarding Government contracts

". . . shall be final and conclusive unless the same is [fraudulent] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

The petitioner contends that the Board's order of November 3, 1971, finding him "not to possess that reliability required of a Star Route contractor", is capricious, arbitrary, not supported by evidence, and in fact so unwarranted as to require trial *de novo* by the court under 5 U.S.C. § 706(2). Petitioner argues that the same grounds require reversal of the Board's October 13, 1970, decision that he had accepted indemnity for loss of compensation due to curtailment of mail service. For the reasons set out below, this court finds that the decisions of the Board in both cases are proper in all respects and grants summary judgment for the defendant.

## I. DECISION OF OCTOBER 13, 1970

In the latter-mentioned decision, the Board, relying on petitioner's letter to the contracting officer on June 23, 1970, found that he had accepted $6.42 as full indemnity for two days when mail service had been curtailed. In that letter, the petitioner stated:

"I hereby agree and accept your decision to make indemnity payment . . . and to reimburse me for the loss of income due to the curtailment of services on Christmas and New Years.

---

[1] The grounds advanced by the respondent for dismissal are that (1) The Postmaster General was the wrong party respondent; (2) the petitioner failed to cite a basis for waiver of sovereign immunity; and (3) this court had previously considered the issues here raised in Lough v. Blount, 336 F.Supp. 627 (D.C., Mont. 1971).

The first ground seems to be disposed of by Crowther v. Seaborg, 312 F.Supp. 1205 (D.Colo.1970), although such disposition is unnecessary in view of the course this court herein takes.

The jurisdictional statute granting this court power to review agency decisions negates the second ground and most important issue of authority of this court to act.

The third ground is likewise without merit. The cited case dealt only with petitioner's prayer for injunctive relief and in no way affects the disposition of the questions here raised.

"Six dollars and forty-two cents doesn't seem like adequate indemnity. However, this case has dragged on for too long and I'm anxious to bring it to a close. Besides the postage and return fees are taking all the profits. Please make any and/or all corrections to get this settlement check to me as soon as possible."

Although petitioner complained that the offered indemnity seemed inadequate, it cannot be seriously contended that petitioner declined the offered indemnity. Nonetheless, petitioner later wrote the Board:

"In my reply, . . . I accepted the terms and provisions of the decision, but I disagreed and object to $6.42 as being the proper monetary indemnity allowed, and ask that this correction be made."

The Board disagreed with this interpretation of the earlier letter and found that petitioner, although disappointed, had accepted the indemnity allowance when he stated, "get this settlement check to me as soon as possible."

It cannot be said that this decision of the Board is not supported by substantial evidence. In the Board's view, the evidence indicated that petitioner considered the letter of June 23, 1970, and the receipt of the check as the end of the transaction which he was anxious to see closed. Further, the Board found evidence that the petitioner received and cashed the indemnity check in the amount of $6.42. Other than petitioner's subsequent claim of non-agreement, there is no evidence that indicates that he refused the offer of indemnity.

I find untenable petitioner's position that the Board, acting on the evidence presented to it, capriciously or arbitrarily reached its decision. On the face of clear evidence, particularly petitioner's written acceptance, the Board reached the most logical conclusion—that when petitioner stated, "I hereby agree and accept . . . the indemnity settlement . . . . Please . . . get the check to me as soon as possible", he meant what he said.

## II. DECISION OF NOVEMBER 3, 1971

In this decision, the Board upheld the contracting officer's termination of petitioner's contract to carry mail along Star Route 59143 between Billings, Montana, and Yellowstone Park, Wyoming, because he did not, on their analysis of the record, "possess that reliability required of a star route contractor." Authority to terminate the contract for such reason is contained in its Section 16(a)(10) which allows termination if the petitioner were found not to be "reliable, trustworthy, or of good character."

The evidence considered by the Board in reaching its decision reflected a growing hostility between the petitioner and the officer in charge of the Gardiner, Montana, Post Office, Mrs. Mary J. Bauer. This conflict was the apparent result of Mrs. Bauer's concern with the procedures employed by the petitioner in delivering the mails—particularly the uncontested fact that petitioner failed on several occasions to lock the doors of the mail truck contrary to Postal Service Regulations. This fact had been noted by several postmasters along petitioner's route. Mrs. Bauer frequently pointed out this deficiency to petitioner, as well as to the Billings Postmaster. Petitioner and Mrs. Bauer had "words" on this subject, and "it appears to have been the source of much annoyance to both of them." (Contract Board Decision, November 3, 1971, page 3.)

On March 5, 1971, petitioner was late in arriving at Gardiner, Montana. The conversation on that day between Mrs. Bauer and petitioner became heated, and, as he was about to leave, led to at least the forcible removal by petitioner of Mrs. Bauer's hands from the unlocked doors of his truck. Mrs. Bauer at the time was insisting that petitioner comply with postal regulations by locking the doors. She claims to have been struck by the petitioner. He admits

pushing her aside or at least using the force necessary to remove her hands or arm from his vehicle. Petitioner's statements of March 5 and 18, 1971. The documents on file and the compilation of them in the Board's decision clearly illustrate that these two had at best "no use" for one another and indicate that quite probably some physical contact occurred between them on March 5, 1971, when she pointed out the unlocked doors on petitioner's truck.

The Board, choosing to rest its decision on whether or not the altercation which they found to have occurred was sufficient to justify termination of petitioner's contract, found that Mrs. Bauer had an obligation, as officer-in-charge, to assure the safe transport of the mails, and was properly performing that duty when petitioner "reacted in an unreasonable, unwarranted and excessive manner", thus demonstrating unreliability sufficient to justify termination of the contract. Board Decision, November 3, 1971, page 8.

Although the Board, by its order of July 13, 1971, elected to rest its decision on the effect of the "altercation", it also noted that it would consider all other circumstances as part of the background leading to the altercation. Thus, the Board properly could consider the repeated warnings made to the petitioner concerning his violations of Postal Regulation.

It cannot be concluded that the Board's decision is unsupported by substantial evidence. Although there may be doubt as to who was initially at fault in these provocations, there is substantial evidence that petitioner repeatedly violated regulations and that the altercation of March 5, 1971, was the consequence of a lawful attempt to correct the wayward pattern. This court is unable to say that the evidence fails to support the Board's judgment.

Nor can it be meritoriously contended that the decision is arbitrary, capricious, fraudulent, or indicative of bad faith on the part of the Board. Though, again, reasonable men might have differed as to who started these unfortunate events, this court cannot say that what occurred on March 5, 1971, illustrates reasonable activity considering the circumstances. All petitioner had to do to rectify the situation was to lock his vehicle. His refusal, a repetition of several past refusals, led in turn to an altercation. The Board's determination that this was an unwarranted and unreasonable over-reaction on petitioner's part cannot fairly be labeled capricious, arbitrary, fraudulent, or as indicating bad faith, and thus must stand.