**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**HERITAGE TRUST COMPANY et al., Defendants.**

**No. Civ. 74–519 Phx. WPC.**

United States District Court, D. Arizona.

July 1, 1975.

On Motion for Clarification Aug. 27, 1975.

less exempt from the provisions of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e. The stipulation and order also appointed Special Counsel to investigate the practices of defendants and report to the Court. The Court retained jurisdiction to enforce the order.

The parties have conceded and the Court finds personal and subject-matter jurisdiction.

On April 18, 1975, plaintiff filed a petition for appointment of a receiver alleging that the defendants Bromley and Heritage were wasting and dissipating trust assets, violating fiduciary duties and that said defendants had, since October 8, 1974, and in violation of the injunctive order offered and sold unregistered preferred stock of defendant corporation. At the hearing on the order to show cause evidence by stipulation of facts, and oral and documentary evidence was presented on these issues. In addition it was established that subsequent to the above order defendants Bromley and Heritage had continued unabated in the interstate sale of corporate notes and inter vivos trusts by use of the mails. The parties were directed to and have briefed these latter two alleged violations. Inasmuch as evidence was introduced by both sides on each of these possible violations and fully briefed, the Court will consider these possible violations as though originally alleged in plaintiff's petition.

There appearing to be no substantial issue as to any material fact, the legal issues determinative of decision are whether any or all of the three types of sales are exempt from registration requirements of law, and if not, then what relief is appropriate. The government urges that these are all securities and there is no statutory exemption available as to any of the three categories and, further, that the sales were fraudulently induced and, since the mails were used, illegal in any event. Defendants claim all sales were exempt from SEC registration, that no fraud was involved, and if

David S. Shughart, II, Atty., U.S. S.E.C., Los Angeles, ·Cal., for plaintiff.

Jack Cavness, of Cavness & DeRose, Phoenix, Ariz., for defendants.

## OPINION AND ORDER

COPPLE, District Judge.

On July 29, 1974, plaintiff filed a complaint alleging violation of Securities laws by defendants and requesting injunctive relief. On October 8, 1974, the parties stipulated to an order of permanent injunction which was signed by the Court. By the terms of the injunction defendants were prohibited inter alia from selling or offering to sell nonregistered securities including, specifically, their "revocable inter vivos trusts", un-

any such is found adversely to defendants a receivership is not justified in fact or law.

## THE PLAN

In the late sixties and early seventies promoters began securing large blocks of undeveloped Arizona land at low prices. The land was then subdivided and sold nationwide at high per-lot prices. The sale was usually with a 10% down payment and a note and mortgage back. These notes were then sold nationwide to unsophisticated buyers through local sales groups. As various courts determined them to be non-exempt securities, e. g., *Hall v. Security Planning Service, Inc.,* 371 F.Supp. 7 (D.Ariz. 1974); *SEC v. Thunderbird Valley, Inc.,* 356 F.Supp. 184 (D.S.D.1973); *SEC v. Dell Investment Co.,* No. 72–L–121 (D. Neb.1972); *SEC v. Lake Havasu Estates,* 340 F.Supp. 1318 (D.Minn.1972); *SEC v. Ford,* No. 3569 (E.D.Wash.1971), this source of funds dried up.

Mr. Bromley, a man with considerable background in trusts, securities and banking, established his trust company. He carefully drew the trust agreements (Revocable Inter Vivos Trusts) to eliminate any standard for investment as trustee of these trusts. As defense counsel contends in defendants' post-trial memorandum:

> "Here again, as the Court has pointed out, the investment powers clause of the instrument is broadly worded and removes the generally applicable limits on investments by the trustee. By its terms, the clause gives the trustee absolute discretion irrespective of *any* rule of law controlling fiduciary investments." (emphasis in original)

With this instrument Mr. Bromley began a nationwide sales promotion to sell these revocable inter vivos trusts to the same general market with a rate of return "assured" (Exhibit 109). There is some evidence (e. g., the New Mexico cease and desist order in evidence) that earlier versions of the trust form, sales materials or advertising may have "guaranteed" a rate of return.

Defendants then invested these trust funds in some of the same Arizona land company notes and mortgages which those companies had been enjoined from selling directly (thus enabling them to do indirectly what they had been enjoined from doing directly), without regard to the land companies' cost or the true value of the underlying security. Defendants later invested substantial sums of trust funds in second mortgages, again without due regard to their true underlying security-value to the trusts involved. (See the various reports of Special Counsel re: the Texas wraparounds, filed with the Court.)

On all of these investments the defendant corporation received a 20% "fee" for such investment. From the testimony and the stipulated facts the Court concludes that this fee is either a finder's fee paid to defendants to induce investment of trust funds (resulting in a clear conflict with the interests of the trustors), or a discounted purchase with the discount taken by the defendant instead of the particular trust to which it should belong. (See Interim Report of Special Counsel.)

Other trust funds have been invested in a Mexican project solely on the security of unsecured promissory notes of Mexican citizens—again for a 20% "fee". Some trust funds have been invested in corporate entities in which Bromley himself had a financial or other interest.

When investments have become in default, defendants have always determined to not foreclose on the security and have used income from other trusts, other trustor investments and corporate funds to continue making income payments to those trusts with defaulted investments to prevent their knowledge of the fact that their investment (trust fund) is in jeopardy. This practice certainly has overtones of a "Ponzi" scheme.

Until ordered by this Court in the Interim Protective Order after the hearing herein, none of the above information, for obvious reasons, had ever been communicated to trustors or investors.

Later, as there was need for more capital to keep the ball rolling, unregistered corporate notes (variously called "guaranteed corporate notes" and "capital notes") were marketed interstate and to at least some unsophisticated and uninformed purchasers.

At least five states (see Stipulation of Facts) have entered uncontested cease and desist orders against Heritage which prohibit it from selling its "Revocable Inter Vivos Trusts" in said states, finding expressly or by necessary implication that they are "securities" under the applicable state law.

## THE PREFERRED STOCK

The State Banking Department, which licenses and audits trust companies in Arizona, determined that Heritage's capital requirement was impaired. After entry of the October 8, 1974 order and to cure this situation a number of Arizona resident corporate noteholders were induced to exchange their capital notes for preferred stock, thus eliminating the capital inpairment by the exchange of creditor positions for equity positions. This exchange is arguably non-exempt. Cf. *Chapman v. Dunn*, 414 F.2d 153 (6th Cir. 1969); *SEC v. McDonald Inv. Co.*, 343 F.Supp. 343 (D.Minn.1972). However the government has not established fraud in this exchange—none of these stockholders testified—and the defendant Bromley testified that he acted on advice of counsel (no corroboration) that such exchange was exempt under *state* law. The Court cannot find on the evidence presented that this was a wilfull violation of the injunction nor that the exchange was induced by fraud.

## CORPORATE NOTES

These notes, either by the literal definition test of *Farrell v. United States*, 321 F.2d 409, 417 (9th Cir. 1963), or the economic realities test of *SEC v. Harvey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), and *Los Angeles Trust Deed & Mortgage Exch. v. SEC*, 285 F.2d 162, 168–72 (9th Cir. 1960), are securities. Counsel for defendants does not appear to seriously contend otherwise. Further, defendants have not carried their burden of proving any applicable exemption as to these notes or their sales, and the notes, having been offered and sold interstate, should have been registered with the SEC prior to offer or sale.[1] There is no credible evidence that defendants' counsel was even aware of these sales, much less that they were made pursuant to his advice. Their sale was a clear and wilfull violation of this Court's injunction which was entered on stipulation of counsel and the terms of which order were known and understood by defendant Bromley. There were at least 49 such sales totalling in excess of $409,000.00. Counsel for defendants avow that such sales were discontinued prior to the hearing herein and will not be resumed. However, in view of defendants' past conduct there are reasonable grounds to infer that unless specifically enjoined defendants will resume such sales or some variation thereof with or without approval of counsel.

## REVOCABLE INTER VIVOS TRUSTS

The most troublesome problem is whether these trusts constituted securities. The evidence is clear that they were sold interstate by use of the mails and by either false or at least misleading statements and material omissions. The Court has neither found nor been cited to any case squarely in point other than the implications of the various state cease and desist orders. The government contends that these are in fact in-

---

1. The government has not adequately established fraud in connection with these sales.

vestment contracts as defined by the Securities Act and therefore are securities subject to registration. Defendants contend that they are "innovative" trusts and not securities and are not subject to registration, citing *Investment Co. Institute v. Camp*, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971): "In short, there is a plain difference between the sale of fiduciary services and the sale of investments." *Id.* at 639, 91 S.Ct. at 1102. The weakness in this argument is that by the nature of the investment powers granted by the "trust agreement" used here and the plain facts of the investment practices of defendants, true *fiduciary* services were neither sold nor furnished. They were treated by Bromley as investment contracts resulting in dangerous and highly speculative investment of trust funds placed where they would generate a high initial "fee" to be taken by defendants and with none of the usual and ordinary regard for safety of the funds entrusted to a trustee by a trustor.

In *Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 480–81 (9th Cir. 1973), cert. denied 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53, the court stated:

"The 1933 and 1934 Acts are remedial legislation among the central purposes of which is full and fair disclosure relative to the issuance of securities, *SEC v. W. J. Howey Co.*, 1945, 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244; *Tcherepnin v. Knight*, 1967, 389 U.S. 332, 337, 88 S.Ct. 548, 19 L.Ed.2d 564. It is a familiar canon of legislative construction that remedial legislation should be construed broadly, *Tcherepnin v. Knight, supra*, 389 U.S. at 337, 88 S.Ct. 548. The Acts were designed to protect the American public from speculative or fraudulent schemes of promoters. For that reason Congress defined the term 'security' broadly, and the Supreme Court in turn has construed the definition liberally. In *SEC v. Joiner Corp.*, 1943, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88, the Court stated: 'However, the reach of the Act does not stop with the obvious and commonplace. Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as "investment contracts", or as "any interest or instrument commonly known as a 'security' "',' 320 U.S., *Id.* at 351, 64 S.Ct. at 123. In *SEC v. W. J. Howey Co., supra*, the Court stated that the definition of a security 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.' 328 U.S. *Id.* at 299, 66 S.Ct. at 1103. And in the recent case of *Tcherepnin v. Knight, supra*, the Court stated, '[I]n searching for the meaning and scope of the word "security" in the Act, form should be disregarded for substance and the emphasis should be on economic reality.' *Id.* at 336, 88 S.Ct. at 553."

As stated above the government claims and defendants deny that these trust agreements are "investment contracts". The Supreme Court first defined the term "investment contract" in *Howey*, wherein it said:

"[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

328 U.S. at 298–299, 66 S.Ct. at 1103.

What defendants offer clearly meets this three-part test. Certainly, there exists a "contract, transaction or scheme." Similarly, this scheme embodied a common enterprise, for any return to the investors and the success of the defendants depended upon the defendants' suc-

cess in inducing yet more people to invest their money in trusts or corporate notes and in finding high discount investments to insure the 20% "fee" to defendants. *Cf. Los Angeles Trust Deed & Mortgage Exch. v. SEC*, 285 F.2d 162 (9th Cir. 1960).[2]

■ Finally, profits are expected to result from the efforts of the defendants. The most essential consistency in the cases which have considered the meaning of the term "investment contract" is their emphasis on whether or not the investor has substantial power to affect the success of the enterprise. When the investor is relatively uninformed and then turns over hs money to others, essentially depending upon their representations and their honesty and skill in managing it, the transaction is generally considered to be an investment contract.

■ Defendants further claim that if these trusts are determined to be securities they are exempt by virtue of exemptions contained in the Securities Act of 1933. Contrary to the assertion of defense counsel, the facts in evidence establish that these trusts do not represent sale of "any interest or participation in a single or collective trust fund maintained by a bank" as those terms are used in 15 U.S.C. § 77c(a)(2), nor is Heritage a bank as the term is used therein. *Capital Funds Inc. v. SEC*, 348 F.2d 582 (8th Cir. 1965). Defendants' business is certainly not substantially confined to "banking".

If defendants are correct that the term "bank" as used above is to include a trust company as "Bank" is defined in 15 U.S.C. § 80a–2, defendants have not established that they are "exercising fiduciary powers similar to those permitted to national banks under the authority of the Comptroller of the Currency" and "which is not operated for the purpose of evading the provisions of this subchapter." On the facts in evi-

dence the Court finds against the defendants on both issues.

■ It is apparent, in conclusion, that defendants' trust promotion and the form of trust agreement as devised, interpreted and administered by defendant Bromley contain the very evils which the Securities Acts are intended to suppress, and represent a novel scheme to seek the use of money of others on the promise of profit to them. Compliance by the defendants with the provisions of the Securities Acts would, in the opinion of the Court, mean the death of the enterprise, since the disclosure and anti-deception provisions of the statutes would be totally inimical to the trust investment practices of the defendants.

The Court has reviewed the recent Supreme Court decision in *United Housing Foundation, Inc. v. Forman*, 837 U.S. 422, 95 S.Ct. 2051, 44 L.Ed.2d 621 decided June 16, 1975. See slip opinion pages 12–19. Although defendants' sales brochures placed some emphasis on avoidance of probate as one of the advantages of a trust, it is also clear that the prime inducement was investment expertise, safety, and assured substantial return. It is difficult to believe any trustor would have invested without anticipation of a safe investment and a profitable return. *United Housing* does not dictate a result different from that reached here. See footnotes 15 and 16 at page 13 of the slip opinion.

## REMEDY

Counsel for defendant claims that because the facts are largely uncontested the real issue is the character of Mr. Bromley. The Court agrees that this is material on the issue of an appropriate remedy and comments as follows:

1. Mr. Bromley has had extensive prior experience in banking, securities and trusts. In 1973 he was censored and fined $2500 by the National Association of Securities Dealers, Inc., for

2. The Court against notes the commingling of trust income and the use of corporate funds to "assure" a fixed return to all trus-

tees whether their investment is in default or not.

mismanaging a fund wherein he was trustee.

2. In soliciting the witness Staib to become Heritage's director or manager of sales for trusts and notes in the state of Nebraska and elsewhere and to recruit salesmen for that purpose, Mr. Bromley represented that Heritage invested corporate and trust funds on a two-for-one collateral basis in short term commercial and industrial development loans. No evidence was introduced that Heritage ever made such investments— all the evidence indicates that such loans were never made. Mr. Staib further testified that he was never advised by Bromley in questioning him about the SEC complaint herein that the complaint contained allegations of fraud nor of the October 8, 1974 injunctive order. He was also never advised of the nature of defendants' trust and corporate investments as detailed previously herein and as more specifically described in the stipulation of facts. It is also apparent that Mr. Staib is relatively inexperienced and is not knowledgeable in the field of securities or investments or trusts except that he determined not to sell these "trusts". He certainly was not an expert investment or trust counselor, as representatives of Heritage were claimed to be in the sales materials.

3. He has suffered a number of state cease and desist orders in regard to sale of these trusts but never sought advice of the SEC as to whether they would be considered "securities" under the federal Securities Acts.

4. Instead of advising trustors of defaults in their investments he has continued their income payments with corporate funds or funds belonging to other trusts in order to lull them into a sense of security. He also elected to not advise the trustors with defaulted investments of his policy of "no foreclosure of security" or even the fact of default.

5. He has failed to advise any trustor of the true nature of his investment.

6. He has failed to advise trustors of the 20% "fee" practice as detailed in the Stipulations of May 13, 1975, and herein. The sales literature and the trust agreements are carefully worded to hide this practice.

7. While claiming to have acted on the advice of a long succession of attorneys, no opinion letters were introduced and no attorney testified to confirm such fact. The Court concludes that Mr. Bromley never got the oral opinions he wanted—therefore the succession of counsel, lack of opinion letters and lack of corroborating testimony.

8. He has retained as a consultant and apparently (Stipulations) intends to appoint as an officer of the defendant corporation the president of three Arizona land companies which have been enjoined by SEC action and in which trustors' funds are invested. The defendant corporation has elected to loan corporate funds to these corporations to enable them to cure their defaults on trust investments.

9. Defendant has now (since the hearing herein) retained additional legal counsel for advice on legal and business decisions, who are also attorneys for the three above-mentioned land companies and their president. New counsel are now in the position of advising defendants as a direct creditor of these companies and as trustee of the trust funds invested in these three companies with regard to defendants' creditor and trustee decisions vis-a-vis these three companies, also their clients, as debtors in obvious financial trouble.

10. As noted above, in wilfull violation of the stipulated order of October 8, 1974, without consulting the SEC further, without petitioning the Court and apparently without consulting his own counsel, Mr. Bromley continued unabated in the interstate sale of these non-exempt corporate notes and the trusts which were the subject matter of the complaint and injunction herein.

There remains, then, the question of the equitable relief to be fashioned. While the Court believes that by now trial counsel have impressed upon Mr.

Bromley the necessity for observing and complying with the orders of the Court, this is not sufficient, given Mr. Bromley's past conduct, to deny affirmative relief. *Cf. Los Angeles Trust Deed & Mortgage Exch. v. SEC, supra,* 285 F. 2d at 180–81. There is also the fact, as the Court assumes, that counsel have advised defendants that a court is invested with certain powers to punish for wilfull violation of its lawful orders.

This Court has no power on the evidence now before it to appoint a receiver to liquidate the defendant corporation. *Los Angeles Trust Deed & Mortgage Exch. v. SEC, supra.* Obviously, the appointment of even a receiver to maintain the status quo until such time as the defendants can comply with the law or until dissatisfied trustors, creditors, or stockholders, if any there be, may take other action is a drastic step which ought not be lightly taken.

While its evidence raises suspicions, the government did not introduce evidence sufficient to establish that the defendant corporation is presently insolvent or has failed or is unable at this time to meet its obligations. The government has not convinced the Court that the appointment of a receiver as opposed to further injunctive relief, closely policed, is necessary at this time. *Cf. SEC v. Turner,* 348 F.Supp. 756 (D. Or.1972). The injunctive relief provided below, absent a further showing, will be adequate to achieve the two purposes for which a conservator type of receiver is requested. *Los Angeles Trust Deed & Mortgage Exch. v. SEC, supra.*

It is ordered:

1. Plaintiff's motion for appointment of a receiver is denied.

2. The Interim Protective Order and Injunction filed herein on May 23, 1975, is quashed.

3. Until further order of this Court the defendants Bromley and Heritage Trust Company, and each of them, and their respective officers, directors, agents, servants, employees, successors and assigns, and all persons acting in concert or participation with them, be and they hereby are restrained and enjoined from directly or indirectly:

(a) Selling or offering to sell unregistered corporate promissory notes of any kind, common or preferred stock, revocable inter vivos trusts or securities of any kind however denominated except upon proof of exemption from registration under federal Securities laws and approval of this Court after filing and service on plaintiff of an appropriate motion. This will not prohibit borrowing by defendants from banks, savings and loan companies or other institutional borrowing except as such may be limited by paragraph 3(b) below.

(b) Investing or re-investing funds of present inter vivos trustors without prior notice to such trustor of the complete and true nature of the proposed investment or reinvestment and the security therefor and a detailed statement of the amount of all fees, commissions, or otherwise to be received by defendants or any of them in connection therewith, and the source of same, and until written approval for such investment or re-investment and fees has been received by defendants from such trustor. Copies of such notices and written approvals shall be filed with the Court with copies to plaintiff at the time of mailing the notice and at the time of receipt.

(c) Charging or collecting from any inter vivos trust fund service fees or charges of any kind except those clearly and fully detailed in paragraphs A through J of defendants' document entitled "Predesigned and Formalized Living Trust Fee Schedule" filed herein on June 12, 1975, as an exhibit to defendants' motions filed that date. Except as provided in paragraph 3(b) above, such fees and charges shall not include the 20% discount or finder's fee referred to earlier in this opinion

and that or other commissions or charges referred to in paragraph K of the above document.

(d) Using the income from any trust investment for any purpose other than to pay directly to or for the account of the trustor of that trust as the trustor has specifically authorized or directed in writing in the trust agreement or in connection therewith and except as permitted by paragraph 3(c) above.

(e) Withdrawing or disbursing any funds or assets of the defendant corporation except in the regular and ordinary course of business and for payment of necessary professional fees and costs incurred for the benefit of the corporation including defense of this action, and fees and costs ordered paid to Special Counsel pursuant to the stipulation and order herein of October 8, 1974, and in connection with institutional borrowing permitted by paragraph 3(a) above.

4. Defendants will permit and provide free and complete access during regular business hours to representatives and employees of the Securities and Exchange Commission for examination of books and records and for interview of officers and employees of defendant corporation as may be reasonably necessary to insure compliance with this order.

5. In order that investors may be fully and fairly informed as to the statutes of this case, possible legal remedies they may have, and its possible effect on their investments, defendants, within ten (10) days of the filing hereof, or such extension as the Court may grant, will mail a copy of this Opinion and Order to every present noteholder, preferred stockholder, trustor and the heads of all sales organizations and independent salesmen (not a part of any such organization) through whom defendants were marketing or selling or offering to sell corporate promissory or capital notes, inter vivos trusts or preferred stock on and subsequent to October 8, 1974. Counsel for defendants will promptly after such mailing file with the Court an affidavit personally confirming the mailings above ordered.

6. This Court will retain jurisdiction of this action in order to insure compliance with this Order and to entertain any suitable application or motion by plaintiff or defendants for additional relief or for modification or clarification of this Order should such be justified.

7. Because of the mailings heretofore and herein ordered, preferred stockholders, corporate noteholders and revocable inter vivos trustors will have been fully advised of the investment practices of defendants, and thus the requirements of law for full and fair disclosure will have been complied with as to past sales. Therefore, at the end of sixty (60) days from the date of filing hereof, defendants, by appropriate motion and notice to plaintiff, may move to quash sub-paragraphs 3(b), 3(c), 3(d) and 3(e) of the foregoing injunctive order. By that time investors and their counsel will have had ample opportunity to determine whether they wish to take any action, and one of the two purposes for maintenance of the status quo, as stated by the court in *Los Angeles Trust Deed & Mortgage Exch. v. SEC,* will have been satisfied.

8. The foregoing Opinion and the Stipulations filed herein shall constitute the Court's findings of fact and conclusions of law in support of the above Order.

## OPINION AND ORDER
### On Motion for Clarification

In this case plaintiff seeks injunctive relief and appointment of a receiver. Extensive hearings were held and on July 1, 1975 this Court filed its Opinion and Order which included findings of fact and conclusions of law, all of which are incorporated herein by reference. The Court denied the request for appointment of a receiver and determined that "absent a further showing" the

injunctive relief provided therein would be adequate to prevent future abuses of the kind noted in that Opinion, to conserve the assets for the investors and by sending copies of the stipulated facts together with a copy of the 20-page Opinion and Order would give investors and creditors an opportunity to determine if they wished to resort to such traditional legal remedies as might be indicated. *L. A. Trust D & M Exch. v. S.E.C.*, 285 F.2d 162 (9th Cir. 1960). The order also retained jurisdiction and provided for policing by plaintiff to insure compliance.

Plaintiff thereafter filed a motion for clarification (after a dispute with defendants over the meaning and extent of the "policing" order), and renewed its motion for appointment of a receiver. Defendants have moved to quash portions of the injunction and to permit them to resume sales of Keogh plan trusts, slightly modified revocable inter vivos trusts and other securities, all without registration. Oral argument on these various motions was heard on August 15, 1975.

At oral argument there was introduced by stipulation a copy of a newsletter sent by defendants to all their investors immediately after filing of the Court's July 1st Opinion but well before copies of that Opinion and Order were distributed to the investors.

The first paragraph of that newsletter and the only part here relevant stated:

"GOOD NEWS—WE WON—WE BEAT THE S.E.C.!! As of 12:25 P.M., July 1, 1975, the Judge ruled in our favor against the government by denying a receiver and we cannot tell you how happy it makes us. It will preserve your interest also, as we *personally* have a feeling of obligation to our clients which could not be replaced. Details will come later."

This newsletter was never submitted to counsel for approval.

By statements made and, more important, by the material omission of the other findings and conclusions in, and the relief actually granted by that order, defendants obviously hoped to lull their present investors into a sense of security, to discourage the unsophisticated from reading the lengthy legal Opinion or consulting counsel and to completely mislead them as to the Court's findings, conclusions and order.

The purpose and content of that newsletter was a blatant attempt to mislead defendants' investors.

The above constitutes a sufficient further showing for this Court to reconsider its original denial of the request for appointment of a receiver.

■ While there has been no sufficient showing by plaintiff that the defendant corporation-trustee is insolvent, that is not determinative. *S.E.C. v. Bowler*, 427 F.2d 190 (4th Cir. 1970).

■■ When the misleading newsletter is added to the facts and conclusions contained in the earlier Opinion and Order of this Court it becomes apparent that here a receiver is necessary to protect the public interest and those who have inflicted serious detriment in the past must be ousted. *S.E.C. v. Bowler, supra.* It is now obvious that no injunction which this Court could frame would cure for the past or prevent in the future the mismanagement and illegalities found in the operation of defendant Heritage to the detriment of the mostly unsophisticated investors to whom it has sold and again proposes to sell. Although, as equitable relief, the disadvantage and possible deleterious effect of the appointment of a receiver must be weighed against considerations indicating the need for such relief, the Court is now satisfied that the balance supports the Commission's request. *Cf. S.E.C. v. Bowler, supra.*

It is ordered:

1. Defendants' motion to modify this Court's previous injunctive order and to

approve resumption of sales as proposed is in each and every respect denied.

2. Paragraph 3(a) of that order is amended to specifically include a prohibition against the selling or offering to sell so-called Keogh or pension trusts of any and every kind until further order of the Court.

3. Although not raised by counsel, the Court notes a possible ambiguity in subparagraph 3(e) of the July 1st Order. It was not the intention by that subparagraph to prohibit defendant corporation from paying when due the interest or principal on the corporate notes which have been sold by the defendant corporation, the further sale of which was enjoined by that Order.

4. Paragraph 4 of that order is enlarged to permit full and complete access to *all* books and records of defendant corporation by representatives and employees of the Securities and Exchange Commission for the purpose not only of insuring compliance, but for a full and complete determination of the financial status of defendant corporation and the present status of and security for all investments, whether Keogh plans, revocable trusts, corporate notes, preferred stock or otherwise, and to report to the Court.

5. The request for a receiver is granted. Counsel for plaintiff will promptly submit to the Court a proposed form of order for appointment of a receiver and authorizing employment of counsel for the receiver, to take charge of all books, records and assets of defendant corporation, and to investigate and make recommendations to the Court as to proceedings to be taken in the interest of and for the protection of all investors and trustors. Counsel for plaintiff will also promptly submit to the Court a list of persons willing and capable of acting as such receiver and the compensation proposed. This paragraph 5 only is stayed for a period of fifteen (15) days to permit defendants to appeal and attempt to secure a further stay, pending appeal.