436 F.Supp. 740 (1977)
J. Bruce MELTON, Plaintiff,
v.
C. Martin UNTERREINER, Security Research Associates, Heritage Trust Company, John R. Bromley, Defendants.
No. 76-181C (1).
United States District Court, E. D. Missouri, E. D.
August 5, 1977.
Harry O. Moline, Jr., Moline & Tegethoff, St. Louis, Mo., for plaintiff.
Robert A. Wulff, Amelung, Wulff & Willenbrock, St. Louis, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
This matter was tried to the Court on briefs, depositions, and exhibits.

*741 Findings of Fact

1. Plaintiff, a citizen and resident of the State of Missouri, brought this action against C. Martin Unterreiner, a citizen and resident of the State of Missouri, who does business in this state through an unincorporated association known as Security Research Associates; Heritage Trust Company (hereinafter Heritage), an Arizona corporation; and John R. Bromley, alleging violations of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, which prohibits the interstate sale of unregistered securities. On August 9, 1976, the complaint, as it related to defendants Heritage and Bromley, was dismissed because the former is in receivership, pursuant to the April 16, 1976, order of the Superior Court of the State of Arizona, and service could not be obtained upon the latter.
2. Unterreiner has been a licensed securities dealer since 1966, and is a member of the National Association of Security Dealers, registered with the State of Missouri. Since 1973, Unterreiner, d/b/a Security Research Associates, in accordance with his employment with Heritage as regional manager, sold inter vivos trusts which were issued by Heritage, and upon which he received a ten percent (10%) commission of the total amount invested by persons he caused to invest in these trusts. Pursuant to this association with Heritage, Unterreiner contacted plaintiff through a general mailing in the United States Mail, and invited him to ask questions of a computertelephone type device, from which voice responses to the questions were received concerning certain financial information. Plaintiff accepted the invitation, and used the device in defendant's presence while in the plaintiff's office.
3. On March 5, 1975, in defendant's office, plaintiff executed a "Declaration of Trust Agreement", which established a revocable inter vivos trust, and he also executed an "Application for Benefits Under Declaration of Trust Agreement". Heritage was named the trustee of the trust, and Frances J. Melton, wife of the plaintiff, was named beneficiary of the trust. On the same date, defendant mailed all the instruments to Heritage, including a check issued by the plaintiff for Five Thousand Fifty Dollars ($5,050.00), which was payable to Heritage. Thereafter, plaintiff paid Heritage Six Thousand Five Hundred Twenty Dollars ($6,520.00), which went into plaintiff's two accounts with Heritage, one an inter vivos trust account and one a Keogh Plan account, making the total amount paid to Heritage Eleven Thousand Five Hundred Seventy Dollars ($11,570.00), of which, defendant received approximately ten percent (10%) as a commission. Plaintiff received payments totaling Six Hundred Eighteen Dollars and Three Cents ($618.03) from Heritage.
4. The "Declaration of Trust Agreement" provides in relevant part:
"The Trustee shall have the full power in its absolute discretion and without prior authority from any court to do everything necessary for the proper administration of this Trust including, but not limited to, the power: (a) to sell, redeem, transfer, exchange, assign, hypothecate, invest or reinvest any property belonging to the Trust Estate irrespective of any rule of law governing investments by fiduciaries; . . ."
5. The defendant assured plaintiff that the trust funds would be invested in, and they were, in fact, invested in, real estate mortgages and contracts.
6. On October 8, 1974, the United States District Court for the District of Arizona, permanently enjoined Heritage, Bromley, and others, from making use of the instrumentalities of interstate commerce to offer or sell ". . . nonregistered securities including, specifically, their `revocable inter vivos trusts', unless exempt from the provisions of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e." Securities and Exchange Commission v. Heritage Trust Co., 402 F.Supp. 744, 745-46 (D.Ariz.1975). Defendant was aware of this injunction, but did not advise plaintiff thereof.
7. The trust agreements involved herein were not registered with the Securities and Exchange Commission or the Missouri Division *742 of Securities, the defendant knew these facts, but did not so advise plaintiff, nor did defendant give the plaintiff a prospectus, because none existed.
8. Section 5 of the Securities Act of 1933 (hereinafter the Act), 15 U.S.C. § 77e, makes it unlawful for any person to directly or indirectly make use of the instrumentalities of interstate commerce for the sell, or offer of sell, of a security for which a registration statement is not in effect. Section 12 of the Act, 15 U.S.C. § 77l, provides for a private right of action against "[a]ny person who . . . offers or sells a security in violation of section 77e of this title . . ." Additionally, section 409.301, R.S.Mo. (1969), provides that
"It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 409.402."
Section 409.411, R.S.Mo. (1969), provides that any person who offers or sells a security in violation of § 409.301, ". . . is liable to the person buying the security from him . . . [and the purchaser] may sue . . . to recover the consideration paid for the security, together with interest at six percent (6%) per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security."

Conclusions of Law
1. This Court has jurisdiction over this matter under section 22 of the Act, 15 U.S.C. § 77v. Greater Iowa Corp. v. McLendon, 378 F.2d 783 (8th Cir. 1967).
2. It is clear that the trusts were offered and sold by use of the instrumentalities of interstate commerce. Pereira v. United States, 347 U.S. 1, 8-9, 74 S.Ct. 358, 98 L.Ed. 435 (1954), by either false or at least misleading statements and material omissions, and that they were neither registered with the Securities Exchange Commission nor the Missouri Division of Securities. Therefore, unless, as defendant contends, the trusts are not securities, or are exempted from registration, the defendant has violated both 15 U.S.C. § 77e and § 409.301, R.S.Mo., and will be liable to the plaintiff under 15 U.S.C. § 77l and § 409.411, R.S.Mo.
3. Section 2 of the Act, 15 U.S.C. § 77b, defines a security as any investment contract. Defendant argues that the trusts are not investment contracts, and, therefore, are not securities and need not be registered. In a well reasoned opinion, Securities and Exchange Commission v. Heritage Trust Co., 402 F.Supp. 744 (D.Ariz. 1975), the Federal District Court for Arizona held that the inter vivos trusts which Heritage issued were securities within the meaning of the Act. This Court agrees.
4. In Securities & Exchange Commission v. W. J. Howey Co., 328 U.S. 293, 298-99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), it was stated that
". . . an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . ."
Here, a contract, transaction, or scheme exists, the common enterprise is to encourage more persons to invest in these trusts based upon the success of defendant's investment so as to increase the commissions and fees, and plaintiff expected profits solely from the efforts of a third party. Surely, these trusts amount to an investment contract.
5. "Finally, . . . in searching for the meaning and scope of the word `security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). Though the accounts herein are called trusts, it is clear from the plain language of the contract that Bromley owed plaintiff none of the fiduciary duties which are usually present in trust agreements. The trustee had the sole power to affect the success of the enterprise, limited only by plaintiff's power to revoke the trusts. Additionally, the agreements *743 which were called "Declaration of Trust Agreement", were standard forms, and were merely sold as one would sell any investment interest. Clearly, these trusts are securities as defined by the Act and the State of Missouri.
6. Defendant claims that if the trusts are securities, they are exempted from registration under the provisions of 15 U.S.C. § 77ddd, because they are investments in a ". . . common trust fund . . . maintained by a bank exclusively for the collective investment and reinvestment of assets contributed thereto by such bank in its capacity as trustee . . ." 15 U.S.C. § 77c(a)(2).
"The burden of proving such an exemption from the registration provisions of the Act rests on the party claiming the benefit of the exemption, and the terms of the Act are to be strictly construed against the claimant . . . To be a banking institution for the purposes of such exemption it appears two qualifications are necessary * * * organization and supervision under the state banking authority, and a business `substantially confined to banking.'" Capital Funds, Inc. v. Securities and Exchange Commission, 348 F.2d 582, 586 (8th Cir. 1965).
Aside from the mere allegation by defendant that Heritage is a bank, no offer of proof is present. Based upon a similar finding in Securities and Exchange Commission v. Heritage Trust Co., supra, and the total lack of evidence to support defendant's contention herein, it is clear that Heritage's business was not "substantially confined to banking". Accordingly, the trusts were not exempt from the registration requirements of the Act.
7. Defendant also argues that the securities are exempt under § 409.402(a)(3), R.S.Mo., because they were issued by ". . a trust company organized under the laws of any state . . ." However, inherent in the definition of a trust company is the fact that certain well defined fiduciary duties must be provided concerning the administration of the trust. As noted above, any and all the fiduciary duties which should have been owed plaintiff were specifically excluded from the agreement in the standard form contract. Therefore, it is apparent that Heritage, while selling these "trusts" with a standard exclusion of any fiduciary duties, could not qualify as a trust company under the terms of § 409.402(a)(3), R.S.Mo.
8. Accordingly, plaintiff will have judgment against the defendant for Eleven Thousand Five Hundred Seventy Dollars ($11,570), plus six percent (6%) interest per year from March 5, 1975, less Six Hundred Dollars Eighteen Dollars and Three Cents ($618.03), plus costs and attorneys' fees.