**J. Bruce MELTON, Appellee,**

v.

**C. Martin UNTERREINER, d/b/a Security Research Associates, Appellant.**

**No. 77–1752.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1978.

Decided May 12, 1978.

---

Robert A. Wulff (on brief) of Amelung, Wulff & Willenbrock, St. Louis, Mo., for appellant.

Harry O. Moline, Jr., St. Louis, Mo., for appellee.

Before HEANEY and HENLEY, Circuit Judges, and HANSON, Senior District Judge.*

HENLEY, Circuit Judge.

This cause is before us on an appeal by the defendant from a judgment in favor of the plaintiff rendered by the United States District Court for the Eastern District of Missouri (Chief Judge James H. Meredith).

In 1974 and 1975 the defendant, C. Martin Unterreiner, a citizen of Missouri and doing business as Security Research Associates, was a sales agent in the St. Louis area of an Arizona corporation known as Heritage Trust Company (Heritage) which was controlled by John R. Bromley.

In early 1975 plaintiff, J. Bruce Melton, a citizen of Missouri, had dealings with the defendant as agent for Heritage, and as a result of discussions between plaintiff and defendant the former invested substantial sums of money in certain inter vivos trusts that were being offered by Heritage. One of those trusts involved a so-called Keogh

* The Honorable William C. Hanson, United States Senior District Judge, Southern District of Iowa, sitting by designation.

Plan for a retirement income that would effect substantial income tax savings.

By early 1976 it had become apparent that plaintiff's investments were probably worthless, and this action was commenced in the district court on March 2, 1976.[1] The complaint alleged that the dealings between the plaintiff and Heritage, through the defendant, amounted to an issuance of "securities" by Heritage which were required to be registered with the federal Securities & Exchange Commission (SEC) by the Securities Act of 1933, 15 U.S.C. § 77a et seq., and with the Division of Securities of the State of Missouri as required by the Missouri Uniform Securities Act, R.S.Mo. §§ 409.401 et seq.[2]

It was further alleged that the "securities" were not registered with either the SEC or the Missouri Division of Securities as required, and that the defendant was liable to the plaintiff under both the federal and state statutes. Plaintiff sought to recover the amount of his total investment, plus interest and costs, together with a reasonable attorney's fee. The "federal claim" was set out in Count I of the complaint and jurisdiction was predicated on 15 U.S.C. § 77v. The "state claim" was set out in Count II of the complaint, and jurisdiction of that claim was pendent due to the absence of diversity of citizenship between the parties.

In the original answer the defendant took the position that the inter vivos trusts in which plaintiff had invested were not securities within the meaning of either the federal or the state statute. By an amended answer defendant alleged that even if the trusts were securities, they were exempt from registration under both the federal and state statutes.

The case was submitted to the district court on the pleadings, depositions, exhibits and briefs. Judge Meredith ruled in favor of the plaintiff. His findings of fact and conclusions of law, amounting to a memorandum opinion, are published as Melton v. Unterreiner, 436 F.Supp. 740 (E.D.Mo.1977).

Defendant in urging reversal advances the same contentions that he made in the district court, and in addition contends that plaintiff is estopped from maintaining the action.

The Securities Act of 1933 provides for the registration of securities with the SEC, and the sale of an unregistered security may be a violation of the statute unless the security is exempt from registration.

15 U.S.C. § 77e(a) provides that unless a registration certificate is in effect as to a nonexempt security, it is unlawful for any person, directly or indirectly:

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

Section 77l provides in pertinent part that "Any person who—(1) offers or sells a security in violation of section 77e of this title . . . shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

Section 77c provides that a number of types of securities are exempt from the

---

1. The complaint named as defendants, in addition to Unterreiner, both Heritage and Bromley. However, after Heritage was placed in receivership by an Arizona state court in April, 1976, the complaint was dismissed as against Heritage and Bromley.

2. The Missouri statute appears at Chapter 409 of the Revised Statutes of Missouri (1969). The statute was amended in certain respects not here material in 1971 and 1975. It was rather extensively amended in 1977 after the respective rights and liabilities of the parties to this action had become fixed.

registration requirements of the Act. Some of the exemptions depend upon the nature of the institution issuing the security in question and upon whether or not the institution is subject to federal or state regulation other than regulation by the SEC. As to the federal claim of plaintiff, it appears to us that plaintiff relies ultimately on § 77c(a)(2) which provides among other things that a security is exempt if it is issued or guaranteed by a bank, or if it represents "any interest or participation in any common trust fund or similar fund maintained by a bank exclusively for the collective investment and reinvestment of assets contributed thereto by such bank in its capacity as trustee, executor, administrator, or guardian." [3]

■ In *Capital Funds, Inc. v. Securities & Exchange Commission*, 348 F.2d 582, 586 (8th Cir. 1965), this court held that the § 77c(a)(2) exemption is to be construed strictly, and that the burden of establishing the availability of the exemption with respect to a given security is on the party asserting the exemption. It was further held that for purposes of the exemption the institution issuing the security (other than a national or federal reserve bank) must be organized and supervised under state banking authority, and that the business of the institution must be substantially confined to banking.[4]

Section 77b(1) defines "security" in comprehensive terms and expressly includes an "investment contract" in the definition, and the definition also includes "in general, any interest or instrument commonly known as a 'security' . . . ."

In the leading case of *Securities & Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), the Supreme Court defined an "investment contract" as follows:

. . . [A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. . . . [This definition] permits the fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of 'the many types of instruments that in our commercial world fall within the ordinary concept of a security.' H.Rep. No. 85, 73d Cong., 1st Sess., p. 11. It embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.

*See also* the discussion appearing in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 847–58, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

The Missouri statute, as it was written in 1975 and 1976, defined a "security" essentially as that term is defined in the federal statute. R.S.Mo. § 409.401(*1*) (1969). Registration of nonexempt securities with the state agency was required, and the sale of a nonregistered, nonexempt security was unlawful. R.S.Mo. § 409.301 (1969). A security was exempt from registration if it was issued by a bank, savings institution or trust company organized and supervised under the laws of any state. R.S.Mo. § 409.-402(a)(3) (1969). And R.S.Mo. § 409.411 (1969) provided that a person violating § 409.301 would be liable to the person buying the security in an amount equal to

---

**3.** That exemption and others were reaffirmed in later legislation. *See* 15 U.S.C. § 77ddd.

**4.** While many banks today perform a large number of services, basically the business of "banking" consists of accepting deposits, cashing checks, discounting commercial paper, and making loans of money. *Cf.* 12 U.S.C. § 36(f)

defining "branch" banks. *See also First American Bank & Trust Co. v. George*, 540 F.2d 343 (8th Cir. 1976); *Missouri ex rel. Kostman v. First Nat'l Bank in St. Louis*, 538 F.2d 219 (8th Cir.), *cert. denied*, 429 U.S. 941, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976).

the consideration paid for the security plus interest, or for damages, and for a reasonable attorney's fee.

Turning to the facts, plaintiff is the pastor of a Presbyterian church in Black Jack, Missouri, who in 1974 and 1975 had money to invest. The defendant is a registered dealer in securities and, as indicated, during the relevant period was a sales agent for Heritage.

Following discussions between plaintiff and defendant, the former decided to invest in revocable inter vivos trusts that Heritage was offering to the investing public.

In order for the plaintiff to make such an investment it was necessary for him to execute a "Declaration of Trust Agreement" and also an "Application for Benefits Under Declaration of Trust Agreement." Those documents, when executed by plaintiff would be mailed, along with plaintiff's remittance, by the defendant to Heritage in Phoenix, Arizona. Heritage, in turn, would mail to plaintiff a nonnegotiable "Trust Receipt." Those three documents spelled out the contractual relationship between plaintiff and Heritage.

As found by the district court, the Declaration of Trust Agreement provided in part:

"The Trustee shall have the full power in its absolute discretion and without prior authority from any court to do everything necessary for the proper administration of this Trust including, but not limited to, the power: (a) to sell, redeem, transfer, exchange, assign, hypothecate, invest or reinvest any property belonging to the Trust Estate irrespective of any rule of law governing investments by fiduciaries; . . . .

436 F.Supp. at 741.

On March 5, 1975 plaintiff executed and delivered to the defendant a Declaration of Trust Agreement and an Application for Benefits Under Declaration of Trust Agreement along with a check in favor of Heritage in the sum of $5,050.00. Those documents and the check were mailed to Heritage by the defendant. On March 7, 1975 Heritage issued and mailed to plaintiff its Trust Receipt evidencing the initial investment. Subsequently plaintiff invested other funds with Heritage and received additional Trust Receipts. Heritage invested the funds of plaintiff in real estate mortgages and contracts. Defendant was paid a 10% commission on the investments.

Some months before plaintiff made his initial investment Heritage had become involved in litigation with the SEC in federal court in Arizona. The district court found in that connection:

6. On October 8, 1974, the United States District Court for the District of Arizona, permanently enjoined Heritage, Bromley, and others, from making use of the instrumentalities of interstate commerce to offer or sell ". . . nonregistered securities including, specifically, their 'revocable inter vivos trusts', unless exempt from the provisions of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e." *Securities and Exchange Commission v. Heritage Trust Co.*, 402 F.Supp. 744, 745–46 (D.Ariz.1975). Defendant was aware of this injunction, but did not advise plaintiff thereof.

436 F.Supp. at 741.

The district court also found, and the finding is not disputed, that the trust agreements involved in the case were not registered with either the SEC or with the Missouri Division of Securities, and that that fact was known to the defendant but he did not advise the plaintiff of it.

Plaintiff's total investment with Heritage amounted to $11,750.00 and he received from Heritage prior to the latter's insolvency the sum of $618.03. The district court awarded plaintiff judgment for the difference between those sums, plus interest and costs, and a reasonable attorney's fee that was fixed ultimately at $3870.00.

The district court concluded that the trusts in question amounted to "securities" under both the federal and the state statutes and that they were not exempt from registration under either statute. In passing on the federal claim the district court gave considerable weight to the holding in

*Securities & Exchange Commission v. Heritage Trust Co.*, 402 F.Supp. 744 (D.Ariz. 1975).

 We take up first and reject out of hand the defendant's belated claim that plaintiff is estopped from maintaining the action. Estoppel was not pleaded in the district court, as required by Fed.R.Civ.P. 8(c), nor was the defense otherwise raised in the trial court. Defendant's effort to raise the question for the first time in this court is nothing but an appellate afterthought. Nor do we perceive in the record any substantial basis for the claim even if it were properly before us.

As to plaintiff's federal claim, we agree with the district court that plaintiff was entitled to recover on that claim, and we can add little of substance to what Judge Meredith had to say on the subject.

We do note that in addition to claiming that the Heritage securities, if they were "securities," were exempt under § 77c(a)(2), the defendant also claimed that they were exempt under the provisions of § 77c(a)(5) and (8). We are satisfied that at pertinent times Heritage was not a bank, or a savings and loan association, or any other type of institution mentioned in § 77c(a)(2) and (5), and that the securities here involved were not of the type exempted by § 77c(a)(8).

We disagree with the district court to the extent that it held that plaintiff was entitled to recover on his state claim as well as on his federal claim. In our view the securities in question were exempt from Missouri's requirement of regulation on the ground that while Heritage was not a "bank" and while it probably was not a "savings institution," it was a "trust company" organized as such under Arizona law and subject to Arizona supervision. In our opinion, the exempt status of a security under R.S.Mo. 409.402(a)(3) (1969) depends upon the corporate nature of the issuing company. While it may be true, as Judge Meredith found, that the securities involved here did not impose normal or conventional fiduciary duties on Heritage, that consideration would not alter the apparently undisputed fact that in 1974, 1975 and 1976 Heritage was a "trust company."

The significance of our difference with the district court is limited to the matter of attorney's fee. The Missouri statute expressly permits the award of a reasonable fee in a case of this kind. The federal statute does not.

We see nothing in this case that would take it out of the general "American rule" referred to in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). And we conclude that the award of a fee to the plaintiff was improper. *Jackson v. Oppenheim*, 533 F.2d 826, 831 (2d Cir. 1976); *Aronson v. TPO, Inc.*, 410 F.Supp. 1375, 1380 (S.D.N.Y. 1976). *Cf. Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547, 553 (2d Cir. 1977).

We think that the judgment of the district court should be modified so as to eliminate the award of attorney's fee.

As modified, the judgment of the district court is affirmed.