**DROVERS BANK OF CHICAGO, an Illinois Banking Corporation, Plaintiff,**

v.

**SFC CORPORATION, a Florida Corporation, American Deposit Trust Company, a Cayman Islands Bank, and John C. Sumner, a citizen of Florida, Defendants.**

No. 78 C 1099.

United States District Court,
N. D. Illinois, E. D.

June 30, 1978.

Donald E. Egan, James C. Murray, Jr., Steven M. Rasher, Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

William T. Kirby, Thomas D. Rafter, Hubachek, Kelly, Rauch & Kirby, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Plaintiff, Drovers Bank of Chicago ("New Drovers") has filed a complaint in two counts seeking declaratory and equitable relief pursuant to 28 U.S.C. §§ 2201 and 2202, that certain certificates of deposit sold by its predecessor, Drovers National Bank of Chicago ("Old Drovers") to defendants are in violation of Regulation Q of the Board of Governors of the Federal Reserve System, 12 C.F.R. § 217 *et seq.*, and, alternatively, the Investment Company Act of 1940 ("ACT"), 15 U.S.C. § 80a–1, *et seq.* Defendants are SFC Corporation ("SFC"), a Florida corporation; American Deposit Trust Company ("ADTC"), a Cayman Islands corporation; and John C. Sumner ("Sumner"), a Florida resident, and the president of SFC and ADTC. The amount in controversy exceeds $10,000. Subject matter jurisdiction is found in accordance with 28 U.S.C. §§ 1331 and 1332 as to Count I and Section 44 of the Act, 15 U.S.C. § 80a–43, as to Count II. Defendants have moved pursuant to Rule 12(b)(6) to dismiss on the ground that the complaint fails to state a claim upon which relief may be granted. In the alternative, defendants seek partial summary judgment under Rules 54(b) and 56(b), F.R.C.P., in the amount of $377,896.24, being the interest payment due July 1, 1978, payable without prejudice.

The essential facts are not in dispute. During 1975 and 1976, defendants Sumner and SFC purchased 52 Certificates of Deposit ("CD's") totalling $15,220,330 from Old Drovers, each of which was in an amount in excess of $100,000. The majority of the CD's mature on July 1, 1982, bear an annual rate of interest ranging from 8¼ to 10 per cent per annum and are payable in quarterly installments. On June 3, 1976, SFC assigned the CD's to ADTC. Thus ADTC is now the owner of the CD's. The CD's were purchased with funds deposited by some 1,617 individuals and entities throughout the United States. The amount of any one deposit was limited to $40,000 to insure that each deposit was fully insured by the Federal Deposit Insurance Corporation ("FDIC"). On January 19, 1978, Old Drovers was declared insolvent and the FDIC was appointed receiver. The same day, New Drovers purchased from the FDIC certain assets and deposit liabilities of Old Drovers, including the 51 CD's in question, thereby making them the obligor on the CD's. The next interest payment in the amount aforesaid is due July 1, 1978.

In its complaint and answer to the instant motion, New Drovers contends that since it is a state member bank of the FDIC, subject to Regulation Q, particularly paragraph 3(a) thereof, it is prohibited from paying "directly or indirectly, by any device whatsoever" any interest in excess of that permitted by 12 C.F.R. § 217.7. The maximum interest permissible on deposits *of less than* $100,000 is 7½ per cent per annum. (emphasis added). According to plaintiffs, because the CD's are the results of "pooled" funds of less than $100,000, Regulation Q applied and payment of interest in excess of 7½ per cent per annum is thereby prohibited. Furthermore, plaintiffs contend that since the CD's allegedly violate Regulation Q, they are illegal. As to Count II, New Drovers contends that the 52 CD's issued by Old Drovers to SFC and assigned to ADTC are contracts in violation of Section 7(a)(2) of the Act, as aforesaid, and are, therefore, voidable by New Drovers. In support of this contention, New Drovers opines that SFC and ADTC were investment companies who were required, but failed, to register as such under Section 8 of the Act, 15 U.S.C. § 80a–8, when they purchased the CD's.

Defendants' position is, simply stated, that at the time Old Drovers executed the 52 CD's, member banks of the Federal Reserve System were not precluded from paying interest rates in excess of 7½ per cent per annum on CD deposits of at least $100,-000 notwithstanding that the CD's were purchased with pooled funds; and, that the "Time Certificates of Deposit—Declaration of Trust" instruments (trust certificates) issued by SFC to its depositors neither constitute "securities" nor make defendants "issuers" within the meaning of the Act.

■ Paragraph (a) of Regulation Q clearly states that "[t]here is no maximum rate of interest presently prescribed on any time deposit of $100,000 or more." More specifically, the Federal Reserve Board ("Board") at 42 F.R. 19350, withdrew a proposed amendment which would have prohibited payment of higher interest rates on CD's purchased with pooled funds. As it is this withdrawn proposed amendment, as well as Board statements formerly in support thereof, which plaintiff primarily relies on to support Count I, the court concludes that the use of pooled funds to purchase CD's is not proscribed and that the clear language of Regulation Q allows for payment of interest based only upon the amount of the deposit, and not the source of the funds. Since it is undisputed that Drovers received 52 separate time deposits of $100,000 or more, Regulation Q has not been violated and the court hereby dismisses Count I for failure to state a claim upon which relief may be granted.

■ As to Count II, the court finds that the "Trust Certificates/Depositors' Receipts" ("TC/DR") issued by defendants were merely depositor's receipts for funds held by SFC "in safekeeping trust" acknowledging that the depositor, as beneficiary of a trust, has a specifically described share in a particular CD issued by Old Drovers which identifies the CD by number, and refers to Drovers' safekeeping receipt number. Clearly, the TC/DR's in question do not constitute securities within the meaning of the Act. Moreover, the instant facts are readily distinguishable from *Securities and Exchange Commission v. Heritage Trust Co.*, 402 F.Supp. 744 (D.Ariz.1975) and *Melton v. Unterreiner*, 436 F.Supp. 740 (E.D.Mo.1977) cited as authority to support plaintiff's contention. There, unlike here, full disclosure was not made by the defendant as to the uses to which the depositor's funds were to be put; the funds, given in exchange for "investment contracts," were, in fact, put into highly speculative schemes; and the trustee in *Heritage* and *Melton* under the contracts had absolute discretion irrespective of any rule of law controlling fiduciary investments. Here, defendants

did not have complete investment authority, nor did they attempt to abrogate, by contract or otherwise, the fiduciary duty owed their 1,617 depositors. Nor are the CD's purchased by SFC securities within the meaning of Section 2(a)(36) of the Act. They are, rather, negotiable instruments within the meaning of Ill.Rev.Stat., 1977, ch. 26, par. 3–104(2)(c) and are thus regulated by banking laws and not by the Act. While a certificate could, under certain circumstances, be considered a security, where as here, the certificates are issued by a bank subject to federal regulation, such circumstances do not present themselves.

Therefore, the court concludes that Count II also fails to state a claim upon which relief may be granted.

Accordingly, defendants' motion to dismiss pursuant to Rule 12(b)(6), F.R.C.P., is granted.